Armando COLON, Plaintiff–Appellant,

v.

Thomas A. COUGHLIN, Individually, and in his official capacity as Commissioner of the NYS Department of Correctional Services, Daniel Senkowski, Individually, and in his official capacity as the Superintendent of Clinton Correctional Facility, Thomas Howard, Individually, and in his official capacity as Hearing Officer at Clinton Correctional Facility, Gary R. Bezio, Individually, and in his official capacity, Michael Carter, Individually, and in his official capacity as a Corrections Officer, Donald Selsky, Director of Special Housing & Inmate Discipline for New York State Department of Correctional Services, Joseph Costello, Deputy Superintendent of Clinton Correctional Facility, Bruce McCormick, Correctional Official, Corrections Captain at Clinton Correctional Facility, Lieutenant Case, Review Officer at Clinton Correctional Facility, Jeff White, Corrections Officer at Clinton Correctional Facility, Mark Carter, Corrections Officer at Clinton Correctional Facility, Defendants–Appellees.

No. 972, Docket 94–2297.

United States Court of Appeals,
Second Circuit.

Argued March 7, 1995.

Decided June 28, 1995.

Jeffrey S. Tolk, New York City (Fried, Frank, Harris, Shriver & Jacobson, on the brief), for plaintiff-appellant.

Denise A. Hartman, Asst. Atty. Gen., Albany, N.Y. (G. Oliver Koppell, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Asst. Atty. Gen., Albany, NY, on the brief), for defendants-appellees.

Before MAHONEY, WALKER and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Armando Colon, an inmate in the custody of the New York Department of Correctional Services, claims that the defendant prison officials, angered by two prior lawsuits brought by him, retaliated by concocting a scheme to plant contraband in his cell and to subject him to disproportionate disciplinary action. The district court (Neil P. McCurn, J., of the Northern District of New York) cast a skeptical eye on Colon's claims and granted the defendants' motion for summary judgment. We too have doubts about the ultimate merits of Colon's claims, and we readily acknowledge that the actions of litigious inmates cause frustrations both for the courts, whose dockets are crowded with prisoners' complaints, and for prison officials, who must defend their actions against myriad challenges. But sometimes such challenges have merit. Because we conclude, contrary to the district court, that Colon's action is not barred by the doctrine of issue preclusion and that, as to all but two defendants, genuine issues of material fact appear in the record, we affirm in part and vacate in part the district court's entry of judgment in favor of the defendants and remand for further proceedings.

## I. BACKGROUND

Armando Colon has been in the custody of the New York State Department of Correctional Services since 1977. He alleges that, prior to 1990, his incarceration was uneventful, and that the only incidents of note were the filing of the two aforementioned lawsuits. The first, initiated in April 1987 as a class action, alleged that the law library at the Clinton Correctional Facility ("CCF") was inadequate. Daniel Senkowski, the superintendent of CCF and a defendant in the present case, was among the named defendants in that action. The second lawsuit, filed in April 1989, challenged a decision denying Colon's application to participate with his common law wife in the prison system's Family Reunion Program. Among the various defendants named in that suit was Joseph Costello, then the acting Superintendent of the Auburn Correctional Facility and, like Senkowski, a defendant in the present case. The record does not tell us the outcome of the 1987 and 1989 lawsuits. We do learn, however, that subsequently Colon married or remarried his wife, in a ceremony that the prison officials were willing to recognize, and that in February 1990 he was about to have his first conjugal visit under the Family Reunion Program.

That visit was precluded by the events that led to this lawsuit. On February 1, 1990, at a time when Colon was absent from his cell, defendant Mark Carter, a corrections officer at CCF, conducted a search of the cell. Car-

ter reported that he found a crude prison-made knife, or "shank," as well as two marijuana cigarettes. Colon was charged with two disciplinary violations for possession of contraband. On February 5, a Tier III disciplinary proceeding was begun, at which defendant Thomas Howard presided as hearing officer.

At the Tier III hearing, Colon maintained that he was innocent of the charges and attempted to show that Carter or another corrections officer had planted the contraband in his cell. Colon argued that he had never been found previously in possession of either a weapon or drugs, and that it was implausible that he would have marijuana cigarettes since, as an asthmatic, he could not smoke. Colon also called witnesses in an attempt to prove his claim. One witness, a fellow inmate, testified that he had observed Colon's cell after the search allegedly had taken place, and that it did not look as if the cell had been searched. Another inmate testified that he had seen Carter before Carter supposedly searched Colon's cell, and that Carter at that time had been carrying a shank in his pocket.

Carter testified at the hearing, and Colon attempted to cross-examine him. Hearing Officer Howard, however, cut short Colon's questioning on several occasions. First, Howard refused to allow Colon to question Carter about why the search had been conducted. Second, Howard cut off as irrelevant Colon's attempt to ask Carter whether Carter had intentionally fabricated the charges against him. And, when Colon asked Howard whether Howard believed that a corrections officer was capable of concocting charges against a prisoner, Howard responded, "I believe the staff here is professional and I don't think anyone would deal along those lines. I know I wouldn't." Howard then stated that he would still have to consider whether the contraband was put in Colon's cell "by someone else," effectively reaffirming that he would not consider the possibility that corrections officers had played the role Colon attributed to them. At the conclusion of the hearing, Howard found Colon guilty of both charges and imposed a

penalty of 360 days of special housing confinement. Colon's administrative appeal was denied by defendant Donald Selsky on April 16, 1990.

In August 1990, Colon was transferred from CCF to the Attica Correctional Facility's special housing unit. Colon alleges that during the processing that accompanied this transfer, defendant Gary Bezio, the individual who had authorized the search of Colon's cell, told Colon that he had been framed in retaliation for his lawsuit against Senkowski.

In July 1990, prior to his transfer, Colon filed a petition in state court pursuant to Article 78 of the New York State Civil Procedure Law and Rules, challenging the imposition of discipline. Colon initially raised two claims in that proceeding. First, he contended that his Fourteenth Amendment right to due process had been violated when Howard refused to allow him to ask Carter why his cell had been searched. Second, he claimed that Howard's response to his question about whether Howard believed a corrections officer was capable of fabricating charges against a prisoner demonstrated that Howard had predetermined Colon's case, thus depriving Colon of his due process right to a fair hearing before an impartial officer. Colon did not contend in his Article 78 proceeding that these alleged violations of his constitutional rights were related to his two prior lawsuits. Before the New York Supreme Court could rule on his petition, Colon withdrew his second claim.

The New York trial court rejected Colon's remaining claim, concluding that Howard had properly barred inquiry into the basis for the search of Colon's cell because Colon was being punished for what was found in the cell, and not for anything that might have led up to the discovery of the contraband. Colon appealed to the Appellate Division, which affirmed. *See Colon v. Coughlin,* 178 A.D.2d 746, 577 N.Y.S.2d 184 (1991).

Colon, proceeding *pro se,*[1] then initiated the present action pursuant to 42 U.S.C. § 1983, alleging that the defendants conspired to concoct false charges, to deprive him of a fair hearing, and to subject him to

---

1. On appeal, Colon is now represented by counsel.

disciplinary action in retaliation for his 1987 and 1989 lawsuits. Colon's complaint and the defendants' ensuing motion for summary judgment were referred to Magistrate Judge Ralph W. Smith, Jr., for the preparation of a report and recommendation. In March 1994, the magistrate judge recommended that the defendants' motion for summary judgment be granted. Over Colon's objections, the district court adopted the magistrate judge's report and recommendation in its entirety, and this appeal followed.

## II. DISCUSSION

### A. *Issue Preclusion*

■ The district court, relying on the magistrate judge's report and recommendation, concluded that Colon's claim of retaliation was barred by the doctrine of issue preclusion, or collateral estoppel, which bars a party from relitigating an issue that has been resolved in a prior proceeding. The magistrate judge focused on the following language in the Appellate Division's decision rejecting Colon's Article 78 petition:

> [Colon] claims [the search of his cell] was probably based on an informant's tip.... Here ... the charges were not imposed upon receipt of confidential information but rather were filed only after the prohibited items were found in petitioner's cell. Any confidential information or reason why the cell was searched played no part in the filing of the charges or the determination of guilt.

*Colon,* 178 A.D.2d at 747, 577 N.Y.S.2d at 184. The magistrate judge interpreted this passage "to mean that the Appellate Division concluded that retaliation played no part in the filing of the charges." Report and Recommendation at 6. We review this interpretation and the district court's conclusion that Colon's claim was barred by issue preclusion *de novo. See, e.g., Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 894 (10th Cir.1994); *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 582 (6th Cir.1994); *In re Graham,* 973 F.2d 1089, 1093 (3d Cir.1992); *Manning v. City of Auburn,* 953 F.2d 1355, 1358 (11th Cir.1992); *McInnes v. California,* 943 F.2d 1088, 1092 (9th Cir.1991).

■ Under New York law,[2] the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. *See Hill v. Coca Cola Bottling Co.,* 786 F.2d 550, 552–53 (2d Cir.1986); *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985). Issue preclusion will apply only if it is quite clear that these requirements have been satisfied, lest a party be "precluded from obtaining at least one full hearing on his or her claim." *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328, 1331 (1979). The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding. *Kaufman,* 65 N.Y.2d at 456, 492 N.Y.S.2d at 588, 482 N.E.2d at 67.

We think there is a substantial question as to whether, under New York law, collateral estoppel should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in an Article 78 proceeding, given the "procedural laxity" of such prison hearings, *see Young v. Selsky,* 41 F.3d 47, 53 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1837, 131 L.Ed.2d 756 (1995), and the limited nature of substantial-evidence review. *See Stork Restaurant v. Boland,* 282 N.Y. 256, 274, 26 N.E.2d 247, 255 (1940) ("Evidence which is sufficient to require the court to submit a question of fact to a jury is sufficient to support a finding by the administrative [agency]."); *see also 300 Gramatan Ave. Assocs. v. State Division of Human Rights,* 45 N.Y.2d 176, 181–82, 408 N.Y.S.2d 54, 57, 379

---

2. We give a prior state court decision the same preclusive effect that the courts of that state would give to it. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); 28 U.S.C. § 1738. We therefore look to New York law to determine the effect of Colon's Article 78 proceeding.

N.E.2d 1183, 1186 (1978). We need not decide those questions today, however, for we conclude that (1) the issues raised in Colon's Article 78 proceeding are not identical to the issues presented in Colon's § 1983 complaint, and (2) to the extent that factual issues crucial to Colon's § 1983 claim were resolved against him in the Tier III hearing, Colon is not bound to that result because the bias of the hearing officer deprived Colon of a full and fair opportunity to litigate his claim.[3]

### 1. The Article 78 Proceeding

■ A careful review of the record and of the trial court and appellate decisions in Colon's Article 78 proceeding reveals that Colon's retaliation claim, which is the subject of these proceedings, was neither raised by Colon before the state courts nor addressed by those courts. Colon's Article 78 petition was narrowly framed: he claimed only that New York law required that there be "reasonable grounds" to support the search of his cell, that Howard had erred by refusing to permit questions about the "reasonable grounds" for the search in which the contraband was discovered, and that he had thereby been deprived of due process. The petition did not mention Colon's 1987 and 1989 lawsuits, let alone suggest that the disciplinary proceedings against him were a response to those

lawsuits. Moreover, the trial court and Appellate Division opinions just address the question of whether Howard's refusal to permit questioning about the reasonable grounds for the search of Colon's cell was constitutional error; the issue of retaliation is not mentioned in either opinion. The broad reading that the magistrate judge gave to the Appellate Division's decision might nevertheless have been warranted had Colon actually presented his retaliation claim to that court, but he did not. And we see no reason to read the Appellate Division's opinion as implicitly deciding an issue that was not even presented to it. Because the broad issue of retaliation was not actually and necessarily decided by the state courts, Colon is not precluded from raising it in his § 1983 action.

■ The defendants argue, however, that while Colon may not be barred from arguing that he was the victim of retaliation, he is precluded from claiming that the shank and marijuana were planted in his cell. The defendants view these allegations, which they contend were presented to the state courts and resolved against Colon, as necessary predicates to Colon's claim of retaliation. In the defendants' view, if the claim that the

---

**3.** The defendants do not contend that Colon's § 1983 action is barred by the doctrine of claim preclusion, or *res judicata*, which bars an action if the plaintiff could have raised the claim in a prior proceeding. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). And claim preclusion generally does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter. *See Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir.1987); *Davidson v. Capuano*, 792 F.2d 275, 278–82 (2d Cir.1986).

We do, however, note one additional, related question, which has neither been briefed by the parties nor addressed by the district court: the issue of whether Colon, a prisoner in state court, is required to raise his retaliation claim in state court before he may do so in federal court. Colon framed his complaint in this case as an action for damages and declaratory relief under 42 U.S.C. sections 1983, 1985, and 1986. The general rule is that "exhaustion of state remedies 'is *not* a prerequisite to an action under § 1983,' even an action by a state prisoner." *Heck v. Humphrey*, —— U.S. ——, ——, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994) (quoting *Patsy v.*

*Board of Regents*, 457 U.S. 496, 501, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982)) (emphasis supplied by *Heck* Court) (internal citations omitted). In *Heck v. Humphrey*, however, the Supreme Court recently held:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at ——, 114 S.Ct. at 2372. It is not immediately apparent whether Colon's claim, involving as it does an allegation that state prison officials misused an administrative process and subjected Colon to administrative penalties in retaliation for his exercise of constitutional rights, is of a type that falls within the holding of *Heck*. Because this issue was neither discussed by the district court nor addressed by the parties on appeal, we express no opinion as to how it should be resolved.

contraband was planted fails, then the claim of retaliation must fail as well.

Applying the requirements of issue preclusion strictly, as we are required to do under New York law, see *Gramatan Home Investors,* 46 N.Y.2d at 485, 414 N.Y.S.2d at 311, 386 N.E.2d at 1331, we cannot agree with the defendants' contention that the state courts were presented with and decided the issue of whether the contraband was planted in Colon's cell. Colon presented a very narrow issue in his Article 78 petition: he claimed that he should have been permitted to inquire into the grounds for the search of his cell because, had it turned out that the search was not conducted properly under New York regulations, that fact would have undermined the credibility of Carter's testimony about the results of the search. He thus argued that the hearing officer prevented him from introducing relevant evidence. The New York courts rejected that narrow claim. The manner in which Colon framed his claim did not directly place in issue his contention that the contraband was planted in his cell—indeed, in his brief to the Appellate Division, Colon took care to make clear that he was not challenging the hearing officer's decision as contrary to the evidence. Thus, the issue of whether the contraband was planted in Colon's cell was not actually litigated and necessarily decided in the Article 78 proceedings, and the state court decisions do not preclude Colon from raising his § 1983 claims in this forum.

## 2. *The Tier III Hearing*

■ The issue of whether the contraband was planted in Colon's cell was fully litigated, and resolved against Colon, in the Tier III hearing. The Tier III hearing in this case may not, however, serve as the basis for issue preclusion. Even if Tier III hearings generally were capable of giving rise to collateral estoppel, an issue on which, as we have indicated, we have substantial doubt, Colon cannot be bound by the result in this Tier III hearing, because Colon was deprived

of the opportunity to litigate his claim fully and fairly before a neutral arbitrator.

Colon was entitled to have his disciplinary charges reviewed by an unbiased hearing officer. *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994). An exchange between Colon and Howard toward the end of the Tier III hearing, however, indicates that Howard was far from unbiased. When Colon asked Howard whether Howard believed that a corrections officer at Howard was capable of fabricating charges against an inmate, Howard responded, "I believe the staff here is professional and I don't think anyone would deal along those lines. I know I wouldn't." This statement, together with Howard's subsequent statement that he would only consider the possibility that the contraband had been planted "by someone else," at the very least creates an issue of fact as to whether Howard refused even to consider, on the evidence, the merits of Colon's principal defense to the charges against him. We do not suggest that every time a prisoner alleges bias on the part of a hearing officer, the allegation alone will suffice to defeat the application of collateral estoppel. But where a hearing officer indicates on the record that, without considering the evidence, he finds a prisoner's factual defense inconceivable, we cannot conclude that the prisoner had a full and fair opportunity to litigate the issue.[4]

Accordingly, neither the Article 78 decision nor the Tier III hearing has preclusive effect in Colon's § 1983 action, and the district court's entry of summary judgment on the grounds of issue preclusion was erroneous.

## B. *Material Issues of Fact*

■ The district court, again relying on the report and recommendation of the magistrate judge, also concluded that no material issues of fact were raised by the evidence submitted on the defendants' motion for summary judgment, and that summary judgment therefore was appropriate on this alternative ground. Here, too, we review the district court's conclusion *de novo. Eagleston v. Guido,* 41 F.3d 865, 870 (2d Cir.1994).

4. Colon did initially raise a claim of bias in his Article 78 petition. The claim was withdrawn, however, and was neither actually nor by neces-

sary implication decided by the state courts. Colon therefore is not now precluded from arguing that Howard was biased.

■ Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988). Colon's allegation that he had sought relief in the courts on two occasions, and that the defendant prison officials retaliated against him for that reason, is sufficient to bring his claim within the purview of § 1983. *Id.* at 590.

■ A plaintiff seeking to defeat a motion for summary judgment, of course, must do more than make broad factual allegations and invoke the appropriate statute. The plaintiff must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Moreover, because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983).

The defendants claim that Colon has failed to take the steps required of him by Rule 56 to meet their motion for summary judgment. They note that although Colon did submit an affidavit in response to their motion, the affidavit is virtually devoid of facts. The more detailed factual allegations of Colon's complaint are irrelevant to this motion, the defendants maintain, because a party may not rest on the bare allegations of a pleading to defeat a properly submitted motion for summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ The defendants' argument fails to take note of the fact that Colon verified his complaint by attesting under penalty of perjury that the statements in the complaint were true to the best of his knowledge. A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e). *See, e.g.,* Fed.R.Civ.P. 56(e) (requiring affidavits to be made on personal knowledge, to set forth facts that would be admissible in evidence, and to demonstrate the affiant's competency to testify to the matters in the affidavit); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (a verified pleading may serve as an affidavit for the purposes of Rule 56(e)); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (same); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1339, at 152 (1990) (noting that a verified pleading may serve as an affidavit only if it contains facts known to be true in the affiant's own knowledge and if it has a certain level of factual specificity).

■ Viewing the evidence in the light most favorable to Colon, we believe that Colon has introduced sufficient evidence in his verified complaint to withstand the defendants' motion for summary judgment. The verified complaint indicates that Colon filed two lawsuits complaining about his conditions of confinement. In one, he sought to participate in the Family Reunion Program. Shortly after he was able to obtain eligibility for the Family Reunion Program and just before his participation in the program was to begin, he was brought up on charges that prevented his participation. The defendants do not dispute these facts on their motion for summary judgment, and we have held that such temporal proximity between an inmate's lawsuit and disciplinary action may serve as circumstantial evidence of retaliation. *See Flaherty*, 713 F.2d at 14; *cf. Harris v. Fleming*, 839 F.2d 1232, 1238 (7th Cir.1988) (timing of litigation and alleged retaliation may be significant). In addition, Colon alleges in his verified complaint that he had never previously been found in possession of either drugs or weapons while in prison, and we have determined that evidence of prior good behavior also may be circumstantial evidence of retaliation. *See Flaherty*, 713 F.2d at 13. While the record contains some indications, in the form of comments by Howard at Colon's Tier III hearing, that Colon's prior prison record was not as pristine as he now

represents, that evidence is not sufficiently clear to resolve the issue of Colon's prior record as a matter of law.

If this circumstantial evidence represented the sum total of Colon's proof, we might be inclined to affirm the grant of summary judgment based on the weakness of Colon's case. *Cf. Flaherty,* 713 F.2d at 13 (stating that, given the ease with which a retaliation claim may be fabricated, summary judgment may be granted if, at summary judgment stage, the claim appears insubstantial). But Colon offers more than circumstantial proof; he also presents direct evidence of retaliation, namely, defendant Bezio's alleged admission of the existence of a retaliatory scheme. To be sure, Bezio submitted an affidavit denying that he ever made any such statement. But the disparity between the affidavits of Colon and Bezio itself creates a credibility issue that is not readily amenable to resolution on summary judgment. *See United States v. Rem,* 38 F.3d 634, 644 (2d Cir.1994).[5] In light of the combination of circumstantial and direct evidence of retaliation that Colon presents, we conclude that his claim, however valid it may ultimately prove to be, is sufficiently strong to defeat the motion for summary judgment as to all defendants except Coughlin and Senkowski.[6]

■ As to Coughlin and Senkowski, however, we believe that summary judgment was proper. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Id.* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).

■ As to Senkowksi, the Superintendent of CCF, the gravamen of the complaint is that, prior to the Tier III hearing, Colon wrote to Senkowski complaining that contraband had been planted in his cell, and that Senkowski took no action to investigate Colon's complaint. This allegation, though based on personal knowledge and sworn to in the verified complaint, is insufficient to create a triable issue of fact. The contents of the letter are not specified; we do not know, therefore, whether the letter was one that reasonably should have prompted Senkowski to investigate. Moreover, Colon admits that the letter predated the Tier III hearing. We see no reason why Senkowski should have intervened in advance of an established procedure in which Colon was to be given the opportunity to substantiate the claim that he made in his letter.[7] We therefore conclude that no reasonable jury could have held Senkowski liable.

■ Colon alleges that Coughlin, the Commissioner of the New York Department of Correctional Services, was grossly negligent in training and supervising the corrections officers under his management. The verified complaint, however, sets forth no facts in Colon's own knowledge that relate to Coughlin; it certainly contains nothing that would support a claim that Coughlin either

5. We reject the defendants' contention that Colon's account of Bezio's statement is incredible as a matter of law and therefore insufficient to create a factual issue.

6. Defendant Selsky claims that he is entitled to absolute immunity in his quasi-judicial capacity of reviewing administrative appeals from prison disciplinary proceedings. This argument was recently rejected by this court, *see Young v. Selsky,* 41 F.3d 47 (1994), *cert. denied,* — U.S. —, 115 S.Ct. 1837, 131 L.Ed.2d 756 (1995), and we need not comment on it further.

7. That the Tier III hearing itself turned out to be flawed does not mean that Senkowski, whose only notice came before the Tier III hearing, was required to investigate Colon's allegations.

knew or should have known of the events of which Colon complains. In the absence of such facts, there is no basis for a jury finding of gross negligence (or deliberate indifference), and summary judgment is proper. The bare fact that Coughlin occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim. *See id.; Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).[8]

## III. CONCLUSION

We affirm the entry of summary judgment in favor of defendants Coughlin and Senkowski. Because Colon's claim is not barred by issue preclusion, and because genuine issues of material fact appear in the record as to the remaining defendants, we vacate the district court's entry of summary judgment as to these defendants. In doing so, we note that it appears that no discovery was taken prior to the defendants' motion for summary judgment. The magistrate judge, to whom the case had been referred, did provide for a period of discovery. That period was relatively brief, however. Indeed, the magistrate judge stayed discovery less than two months after the defendants answered Colon's amended complaint. Colon was incarcerated during this time and was proceeding *pro se.* Moreover, Colon was not inactive during the time allotted for discovery, but seems to have consumed most of it attempting, without success, to persuade the magistrate judge to appoint counsel. Under these circumstances, the district court may wish to consider on remand whether an additional interval of discovery is warranted.[9]

It may be that at some later stage of the proceedings a renewed motion for summary judgment or for judgment as a matter of law would be appropriate. On the record as it currently exists, however, the district court's decision to grant summary judgment was premature as to all defendants except Coughlin and Senkowski, and so we remand for further proceedings consistent with this opinion.

---

**8.** Colon's statement pursuant to Local Rule 10(j) of the District Court for the Northern District of New York alleged that Colon had sent letters to Coughlin complaining that he was framed. Because this allegation was not contained in an affidavit or other verified submission, however, we do not consider it as evidence. Moreover, even if the allegation could properly be considered in response to the defendants' motion for summary judgment, it lacks sufficient factual specificity to create a triable issue. We are not told the contents of the letters, for example, nor are we told whether they were mailed before or after the Tier III hearing. As we noted with respect to Colon's claim against Senkowski, a

high level prison official who received such a complaint before a Tier III hearing could reasonably rely on the established Tier III procedure to reach an appropriate result.

**9.** The possibility of an additional discovery period does not affect the propriety of the summary judgment in favor of Coughlin and Senkowski. Both of these defendants were named in Colon's original complaint, filed more than seven months before the stay of discovery, and Colon did nothing in this period to seek to add substance to his bare allegations against these individuals.