202 F.3d 89 (2nd Cir. 2000)
 ROBERT L. CHARTIER, as President of the Service Employees International Union, Local 32E, AFL-CIO, for an order confirming an award in arbitration pursuant to Section 7510 of the CPLR, and judgment pursuant to Section 7514 of the CPLR, Petitioner-Appellee,
v.
MARLIN MGMT., LLC, also known as Marlin Management of NY LLC, Respondent- Appellant,
3205 GRAND CONCOURSE CORP. and MARTIN SHAPIRO, individually and jointly and severally, Respondents.
 Docket No. 99-7263
August Term, 1999
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued: Sep. 28, 1999
Decided: Jan. 11, 2000
 
 Appeal from a final judgment entered in the United States District Court for the Southern District of New York (Kaplan, J.), granting petitioner-appellee's application to confirm an arbitration award and dismissing the counterclaims of respondent-appellant, the court having found, inter alia, that the latter was obligated to arbitrate the dispute giving rise to the award because the Civil Court for the City of New York had previously determined that respondent-appellant was bound by a collective bargaining agreement to which its predecessor in title was a party.
 Affirmed in part; vacated and remanded in part.
 JEFFREY S. DUBIN, Huntington, New York, (Robert M. Saltzstein, Huntington, NY, on the brief) for Respondent-Appellant.
 CHRISTOPHER A. SMITH, Bronx, New York, for Petitioner-Appellee.
 Before: MESKILL, MINER, and PARKER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Respondent-Appellant Marlin Management, LLC ("Marlin") appeals from a judgment entered in the United States District Court for the Southern District of New York (Kaplan, J.), confirming an arbitration award against Marlin in favor of petitioner-appellee, Robert L. Chartier, as President of the Service Employees International Union, Local 32E, AFL-CIO (the "Union"). The judgment also dismissed Marlin's counterclaims for federal labor law violations. Marlin purchased a residential building located at 3205 Grand Concourse, Bronx, New York (the "Building") from respondent, 3205 Grand Concourse Corporation (the "Seller"), whose managing member is respondent Martin Shapiro. The Union contended that Marlin bought the property subject to a previously negotiated Collective Bargaining Agreement ("Agreement") between the Union and the Seller that provided for mandatory arbitration of all disputes involving the Seller and the Union, as the representative of its members. Marlin denied being subject to the Agreement or its mandatory arbitration clause. Thereafter, Marlin discharged and sought to evict the Building's Superintendent, Marco A. Cardona ("Cardona"), a member of the Union, who was entitled to occupy an apartment in the building by virtue of his employment. The Civil Court for the City of New York, Bronx County (the "Civil Court") dismissed Marlin's summary dispossess proceeding against Cardona, holding that Marlin was bound by the Agreement, and therefore must first follow the requirements of the arbitration clause as it related to the disputed discharge of Cardona.
 
 
 2
 After the action in the Civil Court was dismissed, the Union commenced an arbitration proceeding against Marlin, although Marlin elected not to participate in the proceeding. Following the arbitrator's determination that Marlin's discharge of Cardona was improper, Marlin and Cardona apparently returned to Civil Court. The Civil Court approved a tentative agreement between the parties and entered an Order marking the "matter" off the calendar "with no res judicata or collateral estoppel effect on any other proceeding[ ]." The district court subsequently confirmed the arbitration award, giving preclusive effect to the first decision of the Civil Court, and holding that Marlin was bound by the Agreement's arbitration clause. The district court later denied Marlin's motion for reconsideration, finding that the "new dispossess proceeding" before the Civil Court could not affect the "conclusive" nature of the prior Civil Court determination that Marlin was subject to the Agreement. (emphasis in original).
 
 
 3
 For the reasons that follow, we affirm in part and vacate in part the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 4
 Marlin purchased the Building from the Seller on June 18, 1997. Prior to the sale of the Building, the Seller and the Union had entered into the Agreement, which covered the period March 15, 1995 to March 14, 1998. The Seller also had employed Cardona as the Building Superintendent and provided him with an apartment free of rent and utility charges as a benefit of his employment. Pursuant to the contract of sale, Marlin "agree[d] to acquire the premises subject to the employment of [Cardona]." However, the contract of sale did not specifically refer to the Agreement. Between June and November of 1997, the Union and Marlin communicated several times regarding the Agreement. The Union contended that Marlin was subject to the Agreement, and Marlin denied that it was subject to the Agreement.
 
 
 5
 On December 11, 1997, Marlin discharged Cardona, allegedly for cause. By letter to Marlin, the Union requested a meeting to discuss the discharge, but Marlin refused to meet with the Union. Marlin then began a summary dispossess proceeding against Cardona in the Civil Court to evict Cardona from his apartment in the Building, contending that his discharge as superintendent terminated his right to possession.
 
 
 6
 On February 17, 1998, the Civil Court (Tao, J.) dismissed Marlin's summary dispossess proceeding. Judge Tao's decision stated as follows:
 
 
 7
 [Cardona's] motion to dismiss this proceeding is granted. After careful consideration of the papers submitted, the Court finds that [Marlin], pursuant to the contract of sale, is bound by the terms of the union agreement executed between the prior landlord and [Cardona]. Such terms require that prior to initiating a summary proceeding, [Marlin] must follow the requirements set forth under Article 22, chapter 6 of the union contract regarding disputed discharge cases. Such requirements have not been met here and as a result the instant proceeding was not properly commenced.
 
 
 8
 Based upon the foregoing, the instant matter is dismissed. This is without prejudice to [Marlin] commencing a new proceeding if the arbitrator's award sustains the discharge.
 
 
 9
 The Union had instituted an arbitration proceeding on the theory that Marlin was bound by the Agreement and the arbitration clause. Asserting that Marlin's discharge of Cardona violated the terms of the Agreement, the Union sought Cardona's reinstatement as well as an award of damages and other relief. The arbitration hearing was held on February 24, 1998. Marlin did not attend the arbitration hearing or participate in any other way in the arbitration. In fact, Marlin had previously written to the arbitrator, stating that it was not a proper party to the arbitration and would not participate.
 
 
 10
 On March 20, 1998, the arbitrator issued his decision. The arbitrator found that the Union and Marlin[1] were "parties" to the Agreement, "which provide[d] for the Arbitration of unresolved disputes." Considering whether Marlin had just cause to terminate Cardona, the arbitrator held that Marlin had "failed to carry its burden of proof by a preponderance of credible evidence" that Cardona's "conduct warranted dismissal." Consequently, the arbitrator directed Marlin to pay the Union approximately $5,500 in damages and fees and to reinstate Cardona "immediately with full back pay, plus interest . . . from the date of his improper discharge."
 
 
 11
 Thereafter, Marlin and Cardona apparently returned to the Civil Court. On April 28, 1998, the court "So Ordered" a stipulation between the parties. The stipulated Order read as follows:
 
 
 12
 It is agreed that this matter is marked off [the] calendar with no res judicata or collateral estoppel effect on any other proceedings. Commencing with May [19]98 respondent [Cardona] will pay $300.00 a month as use and occupancy for the [Apartment].
 
 
 13
 He will continue to do so until there is a final federal [court] decision . . . on confirmation of arbitration award. If determination is in Respondent's favor[,] then all use and occupancy paid will be repaid to Respondent. If money [is] not paid, Petitioner [Marlin] may move on 3 days notice for [judgment] of possession.
 
 
 14
 (footnote omitted).
 
 
 15
 The Union subsequently brought suit in state court, petitioning for confirmation of the arbitration award and for a judgment on the award pursuant to New York CPLR Article 75. Marlin removed the action to federal court and counterclaimed for federal labor law violations. In November 1998, after the parties filed cross-motions for summary judgment, they consented to a bench trial before the district court, "on . . . the record . . . before the Court on the parties' motions for summary judgment."
 
 
 16
 On November 24, 1998, the district court issued a decision to grant the Union's petition to confirm the award against Marlin with a modification. See Chartier v. 3205 Grand Concourse Corp., 27 F. Supp. 2d 472 (S.D.N.Y. 1998). After reviewing the facts it deemed most salient, the district court proceeded to consider whether the arbitrator meant to enter an award against Marlin or the Seller.[2] The court concluded that "[w]hile there remains an issue as to whether Marlin was obliged to arbitrate, there is no doubt whatever that the arbitrator meant to enter an award against Marlin." Id. at 474. Accordingly, the court modified the arbitration award so that Marlin was identified as the party against which the award was rendered.
 
 
 17
 The court then considered whether the award, as modified to make Marlin a party, should be confirmed in light of Marlin's contention that it never submitted to arbitration. The court stated as follows:
 
 
 18
 Marlin's position is straightforward and not without appeal. Arbitration is a matter of contract. As a general proposition, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[3]. As Marlin neither was a party to nor explicitly assumed the CBA [the Agreement], it contends that it was not obliged to submit to arbitration, thus rendering the arbitrator's award unenforceable.
 
 
 19
 The difficulty with Marlin's position is the Civil Court judgment in its summary dispossess proceeding against Cardona. The Civil Court there determined that Marlin was bound by the CBA to which its predecessor in title was a party and that it was obliged to arbitrate the Cardona dispute.
 
 
 20
 Id. (footnote in original). Referring to New York law, the court reviewed the doctrine of collateral estoppel and found that "[t]he only prerequisites to application of the rule are that '(1) the issue in question was actually and necessarily decided in [the] prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding[ ].'" Id. at 475 (quoting Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995)).
 
 
 21
 The court concluded that the issue of whether Marlin was bound by the Agreement was actually and necessarily litigated in the Civil Court dispossess action. The court reasoned that Cardona's defense to the dispossess proceedings depended on the proposition that his discharge was wrongful, which in turn depended on a determination that Marlin was bound by the Agreement. Further, the court found "no suggestion that Marlin did not have a full and fair opportunity to litigate the issue." Accordingly, the court gave preclusive, collateral estoppel effect to the prior Civil Court determination that Marlin was bound by the Agreement and confirmed the arbitrator's award against Marlin. The court also dismissed Marlin's counterclaims for federal labor law violations, finding no persuasive proof of any economic harm to Marlin. See id.
 
 
 22
 Marlin then filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, seeking to alter or amend the district court's decision on the ground that the court erroneously applied the doctrine of collateral estoppel. Marlin argued that the court should not have given preclusive effect to the decision of the Civil Court because Judge Tao had specifically indicated that the Civil Court case should not have any res judicata or collateral estoppel effect. In reply, the Union offered the affidavit of its attorney, Denise A. Forte ("Forte"). Forte's affidavit stated that after the February 17th Civil Court decision and the arbitrator's award,
 
 
 23
 Marlin commenced a new proceeding, even though the arbitrator had not sustained the discharge. After Marlin had commenced a new proceeding, Cardona entered into the stipulation of settlement dated April 28, 1998 whereby the parties stated that this settlement should not have any res judicata & collateral estoppel effect on any other proceedings.
 
 
 24
 By amended order dated February 5, 1999, the district court denied the motion to alter or amend the judgment.[4] Initially, the court noted that Marlin's motion was unaccompanied by any affidavit. The court then stated as follows:
 
 
 25
 [Marlin's] memorandum attaches what is said to be "[a] copy of the Civil Court decision" dated April 28, 1998 which, according to [the Union's] counsel, "specifically provided that 'It is agreed that this matter is marked off [the] calendar with no Res Judicata & Collateral Estoppel effect on any other proceedings.[']" No explanation is offered as to the radical difference between the text of this decision and that of the February 17, 1998 decision that was before the Court on the petition to confirm the award.
 
 
 26
 After reviewing the Civil Court's February 17, 1998 decision, the court relied on the "uncontradicted" Forte affidavit concerning the "new dispossess proceeding," and found no reason to alter or amend the judgment. (emphasis in original). In the penultimate paragraph, the district court stated:
 
 
 27
 The Civil Court rendered a final determination that Marlin was bound by the collective bargaining agreement. That determination was conclusive. The fact that Marlin later brought a new proceeding and then settled the new proceeding on terms that included an agreement that the settlement of the new proceeding would have no preclusive effect quite simply is immaterial.
 
 
 28
 This appeal followed.
 
 DISCUSSION
 
 29
 On appeal Marlin renews its challenge to the district court's application of collateral estoppel. It contends that the district court was misinformed about the nature of the Civil Court dispossess proceedings and that the district court's invocation of collateral estoppel relied upon an erroneous belief that the Civil Court's April decision resulted in a case separate and distinct from the Civil Court's February decision. As a result, Marlin asserts that we should remand to the district court.
 
 
 30
 We review a district court's application of the doctrine of collateral estoppel de novo, accepting all factual findings of the district court unless clearly erroneous. See SEC v. Monarch Funding Corp., 192 F.3d 295, 303 (2d Cir. 1999) (applying de novo standard of review to summary judgment based on collateral estoppel); Computer Assoc. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 36869 (2d Cir. 1997) ("We review a district court's application of the principles of res judicata and collateral estoppel de novo, . . . accepting all factual findings of the district court unless clearly erroneous . . . .").[5]
 
 
 31
 Section 1738 of the Judicial Code, provides that judicial proceedings by a state court "shall have the same full faith and credit in every court within the United States . . . as they have . . . in the courts of such state." 28 U.S.C. 1738; see also Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). Hence, as the district court found, New York law governs the application of collateral estoppel in this case. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674, 677 (2d Cir. 1997) ("The governing law in this diversity case is that of New York, where the district court sits: specifically, New York's law on . . . collateral estoppel . . . ."); Long Island Lighting Co. v. Imo Indus., Inc., 6 F.3d 876, 885-86 (2d Cir. 1993).
 
 
 32
 Under New York law, the doctrine of issue preclusion [collateral estoppel] only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. See Hill v. Coca Cola Bottling Co., 786 F.2d 550, 55253 (2d Cir. 1986); Kaufman v. Eli Lilly & Co., 482 N.E.2d 63, 67 (N.Y. 1985). Issue preclusion will apply only if it is quite clear that these requirements have been satisfied, lest a party be "precluded from obtaining at least one full hearing on his or her claim." Gramatan Home Investors Corp. v. Lopez, 386 N.E.2d 1328, 1331 (N.Y. 1979).
 
 
 33
 Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995) (internal footnote omitted).
 
 
 34
 [A] determination whether a full and fair hearing was provided requires consideration of the realities of the [prior] litigation . . . Factors to be considered include, inter alia: 1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of litigation in the prior forum; and 3) the foreseeability of future litigation (because of its impact on the incentive to litigate in the first proceeding).
 
 
 35
 New York v. Sokol (In re Sokol), 113 F.3d 303, 307 (2d Cir. 1997) (internal quotations omitted) (citing Ryan v. New York Tel. Co., 467 N.E.2d 487, 491 (N.Y. 1984)).
 
 
 36
 The doctrine of collateral estoppel promotes important goals: it "conserv[es] the time and resources of the parties and the court; promotes the finality of judgments; preserves the integrity of the judicial system by eliminating inconsistent results; . . . ensures that a party not be able to relitigate issues already decided against it in prior litigation;" and "promot[es] comity between State and federal courts." Johnson v. Watkins, 101 F.3d 792, 795 (2d Cir. 1996) (citing People v. Aguilera, 623 N.E.2d 519 (N.Y. 1993); Staatsburg Water Co. v. Staatsburg Fire Dist., 527 N.E.2d 754 (N.Y. 1988)). Nevertheless, since the doctrine of collateral estoppel poses a danger of placing termination of the litigation ahead of the correct result, it is narrowly applied. See id.
 
 
 37
 In the present case, the district court's application of collateral estoppel apparently relied upon the court's belief that the Civil Court's February and April decisions were issued in separate cases. However, our review of the record reveals substantial questions as to whether these two decisions were, in fact, issued in separate dispossess actions and, if so, whether a New York court would give collateral estoppel effect to the Civil Court's February decision under the circumstances.
 
 
 38
 Instead, the record indicates that the parties may have agreed to reopen the original summary dispossess proceeding against Cardona after the arbitrator's March 20, 1998 decision. The decision entered in the April dispossess proceeding appears to have the same index number as the original dispossess proceeding in February. Compare Marlin Mgmt., LLC v. Cardona, No. 92864/97, slip. op., (N.Y.C. Civ. Ct. Apr. 28, 1998) (Tao, J.) with Marlin Mgmt., LLC v. Cardona, No. 92864/97, slip. op., (N.Y.C. Civ. Ct. Feb. 17, 1998) (Tao, J.). The parties' explanations at oral argument as to the nature of the Civil Court proceedings, the benefit of which the district court lacked,[6] also support this conclusion. The Union's brief contains similar references. See Appellee Br. at 8 ("The words 'new proceeding' do not necessarily mean new action."). Thus, there are indications in the record that the subsequent dispossess proceeding, rather than being a "new" or separate action, was part and parcel of the original action in which the Civil Court entered the February decision.
 
 
 39
 Furthermore, if the February and April decisions were entered in the same case, then the February 17th determination may not have been final or conclusive. It may very well be that the later decision was intended to supersede the earlier decision. The February decision found that Marlin was bound by the Agreement, and the subsequent arbitration found Marlin's discharge of Cardona improper under the terms of the Agreement. If the Civil Court had regarded the February decision as binding, then it would have been useless for the Civil Court to reopen the previously concluded case because it would have been a foreordained conclusion that Marlin's dispossess action would fail. By contrast, the February decision specifically provided for the possibility of reopening the case after the arbitration concluded.[7] Additionally, Judge Tao's April Order specifically provided that the "matter" was marked off the calendar and was to have no res judicata or collateral estoppel effect on any other proceedings. This statement indicates that Judge Tao may have intended the entire dispossess action to have no preclusive effect on future federal court proceedings.
 
 
 40
 If the Civil Court reopened the original dispossess action in April and issued an Order regarding the case's collateral estoppel effect, then the Civil Court may not have considered its own February decision as final, binding, or conclusive. This counsels against another court giving the decision preclusive effect. See Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co., 944 F.2d 1037, 1044 (2d Cir. 1991) (refusing to apply collateral estoppel in an action to compel arbitration in part because the prior NLRB decision was "not--and was never intended to bea final determination"); Wilson v. Steinhoff, 718 F.2d 550, 552 (2d Cir. 1983) (collateral estoppel should only be invoked when the issue "has been litigated and determined by a valid final judgment and the determination was essential to the judgment"); Feldstein v. New York City Dep't of Consumer Affairs, 804 F. Supp. 471, 474 (E.D.N.Y.1992) (discussing the requirement under New York collateral estoppel law of a prior final judgment, not "'subject to change and modification in the future by the same tribunal'") (quoting Bannon v. Bannon, 1 N.E.2d 975, 977 (N.Y. 1936)); Barrett v. United States, 660 F. Supp. 1291, 1311 (S.D.N.Y. 1987) (refusing to apply collateral estoppel based on prior New York state court decision "because [the prior decision] was not a final judgment on the merits" and it "specifically stated" that it was "without prejudice") (internal quotations omitted).
 
 
 41
 The Civil Court's February decision formed the basis for the district court's invocation of collateral estoppel with regard to whether Marlin was bound by the Agreement. While the April decision of the Civil Court was technically before the district court and therefore Marlin preserved its argument for appeal, Marlin's failure to effectively present the relevant facts to the district court and the Union's submission of the ambiguous, if not misleading, Forte affidavit may have resulted in the district court's apparent belief that the subsequent April decision was issued in a separate, unrelated case. As a result, the court understandably felt compelled to give preclusive effect to the February decision of the Civil Court and found the "new dispossess proceeding" immaterial. (emphasis in original).
 
 
 42
 Nevertheless, as the above discussion shows, our review of the record raises significant concerns relating to whether the February and April Civil Court decisions were issued in separate cases and, if so, whether New York courts would give collateral estoppel effect to the February decision under the circumstances. Accordingly, we believe that remand to the district court is appropriate. Although the Civil Court's decisions indicate that it may not have intended its February decision to have any preclusive effect on subsequent proceedings, that intent, while certainly relevant, is not necessarily dispositive. On remand, the district court should closely examine the litigation in the Civil Court and assess whether New York courts would find the February decision final, and whether the other factors considered by New York courts in deciding whether to apply collateral estoppel, see supra at [page 11], considered in toto, weigh in favor of preclusion or against it.
 
 
 43
 The district court's decision reveals that it found some appeal in Marlin's argument that it was not bound by the Agreement. Nevertheless, the court never addressed this point, finding instead that it was bound by the Civil Court's determination. If the district court concludes that the Civil Court's February decision should not be given collateral estoppel effect, the district court will also have an opportunity on remand to examine in the first instance whether Marlin was bound by the Agreement and its arbitration clause.
 
 
 44
 Accordingly, we vacate the judgment of the district court to the extent that it confirms the arbitration award and remand the case to the district court for the further inquiry and determination we have outlined above. In light of the foregoing, it is unnecessary for us to address Marlin's contention that it was not bound by the Agreement. Because we do not find clearly erroneous the district court's determination that proof of economic harm to Marlin was lacking, we affirm so much of the judgment as dismissed Marlin's counterclaims for federal labor law violations. With respect to those portions of the district court's judgment modifying the arbitration award to identify Marlin as the employer named in the award and disposing of the issue of notice of arbitration to Marlin, we affirm for essentially the same reasons given by the district court.
 
 CONCLUSION
 
 45
 In accordance with the foregoing, we affirm in part the judgment of the district court and vacate and remand in part for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The arbitrator's decision never referred to Marlin by name, but instead consistently referred to the "Employer."
 
 
 [2]
 Before the district court, Marlin also disputed the validity of the arbitration notices it received from the Union, noting that the first arbitration notice identified the Seller as the respondent and the second notice listed the respondent as "3205 GRAND CONCOURSE CORP. C/O MARLIN MGMT., LLC." The district court found that although Marlin was not properly served, it "admittedly" received notice of the arbitration and chose not to participate. Marlin renews its challenge to the notice here.
 
 
 [3]
 United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).
 
 
 [4]
 The court initially denied the motion to alter or amend the judgment on February 4, 1999. One day later it issued an amended order with a slight correction not relevant to this appeal.
 
 
 [5]
 Our decision to accept the district court's fact-based findings unless clearly erroneous is reinforced by the parties' stipulation to the record before the district court, which permitted the court to resolve disputed issues of fact as if a trial on the merits had occurred. See Hester Industries, Inc. v. Tyson Foods, Inc., 160 F.3d 911, 915 (2d Cir. 1998) (stating that a district court's findings of fact should only be overturned if they are clearly erroneous), cert. denied, 119 S. Ct. 1805 (1999); see also Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) (a factfinder's choice between two permissible views of the evidence, including documentary evidence, cannot be clearly erroneous).
 
 
 [6]
 Although the district court did not have the benefit of the parties' oral arguments before us, the issue was placed before the court by Marlin's motion to alter or amend the judgment, which attached a copy of the subsequent Civil Court decision.
 
 
 [7]
 Although the Civil Court provided for the possibility of reopening the case in anticipation of Marlin possibly prevailing before the arbitrator, which Marlin admittedly did not, the Civil Court's reference to the reopening of the case demonstrates that it did not necessarily consider the February decision final.