**Michael WEBB, et al., Plaintiffs,**

v.

**Glenn S. GOORD, et al., Defendants.**

**No. 99 CIV. 10394(VM).**

United States District Court,
S.D. New York.

Sept. 29, 2000.

Paul E. Kerson, John F. Duane, New York City, for plaintiffs.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs in this action are thirty-seven individual prisoners incarcerated in various facilities operated by New York State's Department of Correctional Services ("DOCS"). They bring this action under 42 U.S.C. § 1983 for alleged violations of their civil rights arising from separate incidents that occurred at thirteen different DOCS prisons. The unlawful conduct plaintiffs describe implicates different combinations of the numerous defendants, who are the Commissioner of DOCS, the Superintendents of the facilities where the incidents occurred, the corrections officers who participated in causing the injuries plaintiffs claim and various other administrators of the State's prison system. Plaintiffs all claim to have suffered physical injuries caused by assaults perpetrated either by corrections officers or by other inmates at the facilities where they are held.

The common thread that binds plaintiffs' allegations is that of general improper administration of the state prison system, a claim founded on the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626. Plaintiffs' Amended Complaint also sets forth separate causes of action for conspiracy to commit cruel and unusual punishment; conspiracy to violate their civil rights; assault; intentional infliction of emotional distress; respondeat superior liability; negligence; and denial of medical treatment.

As remedies for these alleged violations, plaintiffs request injunctive relief pursuant to the PLRA directing defendants to "implement[ ] new practices and procedures to be determined by this Court designed to end the Reign of Terror now pervading the

State's prisons" (*see* Amended Compl., Prayer for Relief); appointment of a Special Master under this Court's direction to supervise defendants in the implementation of such new practices and procedures (*see id.*); and compensatory and punitive damages, and the costs and attorney's fees associated with this action. *See id.*

Six of the plaintiffs in this litigation currently have actions pending in other federal districts in New York. Plaintiffs move to consolidate these actions along with various other pro se claims filed by plaintiffs here arising from the incidents described in their Amendment Complaint.[1] Defendants oppose the consolidation and move to dismiss the Amendment Complaint, claiming lack of subject matter jurisdiction, failure to state a claim, improper venue, improper joinder, qualified immunity, Eleventh Amendment immunity, lack of personal involvement and failure to exhaust administrative remedies. For the reasons described below, the Court denies plaintiffs' motion to consolidate and grants defendants' motion to dismiss. Plaintiffs are granted leave to replead as specified below.

## I. *PLAINTIFFS' MOTION TO CONSOLIDATE*

Plaintiffs seek to consolidate into one action in this Court the six other actions already brought by some of these plaintiffs and now pending in other federal courts, as well as other claims by these and other prospective plaintiffs alleging similar injuries by reason of defendants' conduct in not properly administering the State's prison system. In effect, plaintiffs seek to establish a case, although not so labeled, akin to a class action challenging State prison conditions and operational practices.

 Rule 42(a) of the Federal Rules of Civil Procedure authorizes the Court to consolidate for joint hearing or trial any or all matters at issue "[w]hen actions involving a common question of law or fact are pending

---

1. The six actions are *Britt v. Dep't of Corrections*, 99 Civ. 1672 (S.D.N.Y.); *Dupree v. Couture*, 99 Civ. 1608 (N.D.N.Y.); *Sullivan v. Goord*, 99 Civ. 0474 (N.D.N.Y.); *Smith v. Martin*, 98 Civ. 0081 (N.D.N.Y.); *Mingues v. Bezio*, 96 Civ. 0474 (N.D.N.Y.); and *Barnes v. Goord*, 90 Civ. 7990 (E.D.N.Y.).

before the court." Fed.R.Civ.P. 42(a). Among the paramount benefits gained by consolidation are the convenience and efficiency of avoiding "unnecessary costs or delay". *Id.* But these objectives cannot be pursued at the sacrifice of fairness to all the parties. *See Malcolm v. National Gypsum Co.,* 995 F.2d 346, 350 (2d Cir.1993). As the parties seeking consolidation, plaintiffs bear the burden to demonstrate that the actions in question share common issues of law or fact. *See In re Repetitive Stress Injury Litigation,* 11 F.3d 368, 373 (2d Cir.1993).

■ Plaintiffs' legal theory and claims for relief are grounded on alleged misconduct by defendants generally consisting of failure to protect plaintiffs adequately from assaults by corrections officers and other inmates and of denial of adequate medical treatment. Beyond the similarity among the type of incidents plaintiffs seek to combine here, and their occurrence in the state prison system under the administration of some defendants, plaintiffs have not established any other direct connection between their injuries, the alleged misconduct and the various defendants to demonstrate sufficient common issues of fact or law.

The six cases filed in the other federal courts entail different events occurring at different times and at different facilities. They involve different defendants and different conduct. In fact, these six actions may be but a few of a larger number of other like actions now pending in federal courts in New York entailing complaints by inmates of assaults by prison officials or by other prisoners, or of inadequate attention to inmates' medical needs. There is no more ground to find common issues of facts or law supporting consolidation with the matter before this Court the particular six actions plaintiffs seek to integrate here than there is such commonality among the perhaps hundreds of other similar cases currently pending in federal courts that were brought by prisoners under § 1983 complaining of comparable misconduct based on equally unrelated incidents.

The Court believes that whatever common issues of law or fact may exist in the cases plaintiffs seek to consolidate are strained and attenuated. Moreover, whatever economy may be achieved by joining these actions, is outweighed by the prejudice and unfairness to the parties being compelled to try their actions in a district far more distant than the one in which the cases were originally filed. Combining into a single action unrelated incidents involving distinct events and disparate parties also carries the *potential* of confusing a jury and of exposing some defendants to the risk of liability by loose institutional association for the unconnected wrongdoing of others.

Finally, because the underlying events are unconnected in time, place and parties, pretrial discovery, examination of records and the filing of motions is likely to proceed separately in any event as to each individual claim, prejudicing by delay the actions of those plaintiffs who may be ready to proceed to trial on the merits sooner than the rest. Nor, as described below, does plaintiffs' attempt to link these unrelated incidents of alleged misconduct by a theory of conspiracy prove any more availing to support consolidation. Plaintiffs' pleadings offer no factual grounds sufficient to tie the events and wrongdoing alleged in the separate actions here at issue into a commonly grounded conspiracy.

Accordingly, the motion to consolidate is denied.

## II. *DEFENDANTS' MOTION TO DISMISS*

With regard to the claims that would remain in this Court upon the denial of consolidation, defendants cite a number of procedural, jurisdictional and substantive grounds in support of their motion to dismiss, including, improper venue, improper joinder of claims and parties, and failure to exhaust administrative remedies. The Court finds that a number of the distinct claims plaintiffs raise may be dismissible under some or all of these grounds. Rather than examining the merits of each contention on these bases, however, the Court concludes that dismissal of all of the remaining actions is warranted under defendants' contention that plaintiffs fail to state a claim upon which relief can be granted.

## A. STANDARD OF REVIEW

In considering a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court must accept plaintiff's factual allegations as true, and may properly dismiss the action only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must assess only the sufficiency of the complaint and draw reasonable inferences in favor of plaintiffs.

■ The Second Circuit has directed that in reviewing the sufficiency of claims brought by incarcerated *pro se* litigants alleging civil rights violations the courts must accord special leniency. *See Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir.1974). This judicial solicitude, however, is not intended as a license to sustain any complaint that contains nothing more than descriptions of broad generalizations, shocking conditions, sweeping castigations and unfounded conclusions, but no specific facts from which an actual deprivation of rights may be inferred. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

■ Here, plaintiffs, citing the various personal injuries described in their complaints, assert that they are "actual and representative victims of the Reign of Terror that characterizes the current administration of the New York State prison system by the defendants officials...." *See* Plaintiffs' Memorandum of Law in Support of Motion for Consolidation and in Opposition to Defendants' Motion to Dismiss, dated June 16, 2000, at 1. They liken the "brutal unconstitutional conditions" they allege prevail in the State prisons "to the prison system described by ... Aleksandr I. Solzhenitsyn in ... *The Gulag Archipelago....*" *See id.* at 2.

Invoking the Bill of Rights, and the prayers for the country by Benjamin Franklin and George Washington, they invite this Court "to ask itself these questions: Are these defendants living up to the Founders' dream for them? Are they acting justly, are they loving mercy? Are they, by their actions, their negligence, their wantonness, their recklessness, practicing cruel and unusual punishment forbidden to them by the 8th Amendment?" Plaintiffs describe State prison conditions as "positively medieval" and condemn the administration of the system as "defective, improper, negligent and a continued and repeated violation" of the Eighth Amendment and the Civil Rights Laws of the United States. *See id.* at 9.

■ To put an end to the Reign of Terror they say threatens inmates day and night with violent cuts or beatings by defendants, plaintiffs urge the Court to enjoin defendants' unlawful acts and to appoint a Special Master to oversee the administration of the State's prison system. Such an intrusion into the domain of State functions and executive authority, extraordinary under any circumstances, on the record here would represent an arrogation of judicial power. Indisputably, plaintiffs, like all prisoners and other persons under the control and dependence of the State, have rights to be reasonably protected from physical harm and are owed a duty to be treated humanely. *See generally Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *Hayes v. City of New York Dept. of Corrections,* 84 F.3d 614 (2d Cir.1996).

When those rights are violated, our system of government incorporates less drastic, more measured and orderly means to redress the wrongs than for judges, through self-appointment, to transform into wardens. The separation of powers and other constitutive safeguards we have built into our federal scheme are designed to protect values as vital to our governmental order as are the individual liberty interests plaintiffs here invoke as crucial to their persons.

The Court does not wish to minimize the gravity of the conditions plaintiffs portray, nor to treat lightly the grievousness of the harm they may have sustained. It may very well be that some of the injuries some of

these plaintiffs have suffered may be attributed—some of the stated times—to some wrongdoing by some of the defendants they name. But as described in the complaint before the Court, the interrelationships among the parties, as well as the links between factual cause and effect and constitutional deprivations, fall short. Plaintiffs cannot fill in with rhetoric what the complaint wants in substance. They should not conflate eloquence with law, or substitute fervor for facts. Not all of our Founders' personal aspirations for the nation, however ancient, prayerful or profoundly felt, necessarily give rise to constitutional obligations. Simply put, charged with poignancy and passion though the pleadings here may be, plaintiffs' Amended Complaint is tenuous and slender on the law. It fails to assert sufficient factual allegations to state the elements of the wrongful deprivations of civil rights plaintiffs claim.

## B. THE PLRA

█ While plaintiffs contend that prison conditions in the State fail to comply with constitutional standards, as evidence their Amended Complaint relies on each of the plaintiffs' unrelated incidents of assault by different corrections officers or other inmates occurring at thirteen distinct prison facilities during a period spanning over ten years. As a remedy for the conditions plaintiffs describe, they invoke Section 3626 of the PLRA, asking for broad injunctive relief and the appointment of a Special Master.

On the basis of sparse, loosely related allegations, what plaintiffs effectively press this Court to do is to supplant the State's prison administrators and constitute itself as overseer of New York's corrections system. Aside from the practical and constitutional deficiencies inherent in that proposition, plaintiffs' suggested remedy is not supported by the very statute they invoke. The PLRA provides that the Court shall not grant any prospective relief unless it finds that "such relief is narrowly drawn, extends no further than necessary to correct the violation of Federal right, and is the least intrusive means necessary to correct the violation of the federal right." 18 U.S.C. § 3626(a)(1)(A).

For these reasons, the Court therefore finds that plaintiffs have failed to state sufficient grounds for the relief they seek under the PLRA.

## C. CONSPIRACY

█ Plaintiffs contend that the "Reign of Terror" they describe as pervading the entire State prison system is a product of an extensive conspiracy among defendants to commit cruel and unusual punishment in violation of the Eighth Amendment and the civil rights of the State's prison population. But other than sweeping, conclusory pleadings of conspiracy, plaintiffs offer no factual basis of any agreement, action in concert or overt conduct by any of the defendants that falls within the scope of conspiracy to deprive plaintiffs of their civil rights. *See Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.,* 968 F.2d 286, 290–91 (2d Cir.1992); *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991). Consequently, plaintiffs' conspiracy claims must be dismissed.

## D. EIGHTH AMENDMENT

The crux of plaintiffs' constitutional claims is that defendants failed adequately to protect them from prison officials or from other inmates, as a consequence of which they suffered grievous assaults, and that they were not offered proper medical care for their injuries. Adequately plead, and citing sufficient factual details of the attacks, some of the incidents plaintiffs describe may be sufficient to withstand a motion to dismiss. Indeed, standing alone a number of these claims remain active as separate claims in other actions already pending in other courts. But the theory plaintiffs present to this Court in their Amended Complaint is that these disparate actions by defendants must be viewed collectively, and that in their totality they constitute a massive, concerted and repeated violation of the Eighth Amendment and of plaintiffs' civil rights under § 1983.

The Court finds insufficient basis in plaintiffs' Amended Complaint to sustain their constitutional theory of liability. By their own account, a number of the attacks plaintiffs cite as evidence of defendants' wrongful

failure to protect were committed not by any defendants, but by unknown inmates. As regards these assaults, plaintiffs do not allege that defendants knew of the assaults and failed to prevent them, or that defendants did not respond properly once they became aware of the attacks. Nor do they furnish any more specifics identifying by which defendants and in what particular ways plaintiffs were deliberately deprived of adequate medical treatment.

These allegations do not satisfy the prerequisites to state a claim under the Eighth Amendment. The standards for such a claim require a demonstration of both an objective and a subjective element. The injury the prisoner suffers must be sufficiently serious to rise to the level of constitutional harm, and defendants' misconduct must demonstrate sufficiently serious culpability; it must exhibit evil intent, recklessness or deliberate indifference to a substantial risk of serious harm to inmates under their custody and dependence. *See Farmer,* 511 U.S. at 833, 114 S.Ct. 1970; *Estelle,* 429 U.S. at 103, 97 S.Ct. 285; *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974). Some of the pleadings' same causal and fault infirmities render plaintiffs' § 1983 claims deficient for the additional reasons that there is no indication of personal involvement by some defendants in the alleged constitutional violations. *See Monell v. Dept. Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Plaintiffs' federal claims are consequently dismissed in their entirety, with leave to replead granted as to the claims of plaintiffs who are parties to the underlying action before the Court.

### E. *STATE LAW CLAIM*

In addition to their federal claims under the PLRA, the Eighth Amendment and § 1983, plaintiffs allege separate causes of action for assault, intentional infliction of emotional distress, respondeat superior tort liability and negligence. These claims rest essentially on state law. With the dismissal of plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining claims. *See generally*

*Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994). By the same token, the Court finds it unnecessary to address defendants' defenses based on qualified immunity and Eleventh Amendment.

### III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that plaintiffs' motion to consolidate with this case the other matters specified above that were brought by some of the plaintiffs herein and pending in other district courts is denied; and it is further

**ORDERED** that defendants' motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted is granted; and it is finally

**ORDERED** that the Clerk of Court is directed to close this case, provided that the matter may be reopened if within thirty (30) days from the date of entry of this Order plaintiffs to the underlying action before this Court file a Second Amended Complaint relating to their claims.