**David Michael LOCICERO, Plaintiff,**

v.

**James O'CONNELL, Superintendent & Mr. Featherston, Correction Officer, Downstate Correctional Facility, New York State Department of Correctional Services, Fishkill, N.Y., Defendants.**

No. 04 Civ. 07708(VM).

United States District Court, S.D. New York.

March 6, 2006.

---

David Michael Locicero, Malone, NY, pro se.

### DECISION AND ORDER

MARRERO, District Judge.

*Pro se* Plaintiff David Michael Locicero ("Locicero") brought this action pursuant to 42 U.S.C. § 1983 against the New York State Department of Correctional Services ("DOCS"), Downstate Correctional Facility ("Downstate"), Downstate Superintendent James O'Connell ("O'Connell"), and Downstate Correction Officer Featherston ("Featherston") (collectively, the "Defendants"), alleging deprivations of his Eighth Amendment right to be free of cruel and unusual punishment.[1] Locicero's claim

---

1. In response to the Defendants' argument that DOCS and Downstate are shielded from suit under the Eleventh Amendment, Locicero has indicated that he has decided not to pursue any claims against them. (*See* Plaintiff's Reply to Defendants' Memorandum and Motion to Dismiss His Complaint, dated July 12, 2005 ("Pl.Mem."), 3.)

emanates from an alleged unprovoked assault at the hands of Featherston.

O'Connell moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)") on the grounds that Locicero has failed to allege: (1) O'Connell's personal involvement in the purported constitutional deprivations; and (2) that O'Connell acted with a sufficiently culpable state of mind to constitute deliberate indifference.[2] For the reasons set forth below, the motion is DENIED.

## I. FACTUAL BACKGROUND [3]

### A. FACTS

■ In ruling upon a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir.1997). Accordingly, the factual recitation that follows is derived exclusively from Locicero's version of events.

Locicero is an inmate in the custody of DOCS. At the time of the alleged incident, he was incarcerated at Downstate, where O'Connell was the superintendent and Featherston was a correction officer.

On August 6, 2001, Locicero was issued a disciplinary ticket by an unnamed correction officer while in the Downstate gym. When Locicero could not recall the name of a witness he wished to call at the subsequent hearing on the citation, the unnamed officer instructed Locicero to inform the area officer in the event he recalled the identity of the witness.

On August 9, 2001, after catching sight of the witness in the mess hall, Locicero brought the matter to the attention of another unnamed officer, who directed him to talk to his block officer, Featherston. Upon Featherston's arrival shortly thereafter, Locicero attempted to explain the situation. Featherston, according to Locicero, rebuffed him in an abrasive fashion. Locicero admits that he expressed his displeasure by making a grunting sound while walking away.

After Featherston left the mess hall, he pulled Locicero out of line and into an area shielded from the sight of other inmates. Featherston instructed him to face the wall and place his hands high on it. When Locicero again tried to explain the situation, Featherston threatened him. As he was returning to his cell, Locicero again manifested his displeasure, this time by clenching his fists.

Featherston then summoned Locicero from his cell, directed him to the TV room, and there began to berate Locicero for clenching his fists earlier and, without any provocation on Locicero's part, struck him in the sternum, knocking the wind out of him. A brief verbal exchange ensued, after which Featherston punched Locicero in the face, sending him to the ground. Featherston then taunted and repeatedly

---

**2.** Initially, O'Connell also asserted a defense of qualified immunity. (See Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint, dated April 28, 2005 ("Def.Mem."), 11–14.) He subsequently withdrew the argument, acknowledging it as premature. (See Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss the Complaint, dated August 3, 2005 ("Def.Reply"), 2 n. 2.) See McKenna v. Wright, 386 F.3d 432, 434 (2d Cir.2004) (concluding that, although a quali-

fied immunity defense can be presented in a 12(b)(6) motion, it faces a "formidable hurdle when advanced ... at this preliminary stage.")

**3.** The factual recitation below derives from Plaintiff's Complaint, dated July 29, 2004 ("Compl."). Except as specifically quoted or otherwise cited, no further reference to this document will be made.

kicked Locicero. Following this assault, Locicero complied with Featherston's order to return to his cell. When Officer Bell relieved Featherston, Locicero was permitted to go to the hospital.

Locicero's factual allegations relating to O'Connell's personal involvement and deliberate indifference are presented in Part II.B below in addressing the issues raised by O'Connell's motion to dismiss.

## B. *PROCEDURAL HISTORY*

Attorneys from the Office of the New York State Attorney General, who represent O'Connell, contend that Featherston has not received notice of the claim against him, while Locicero contends that Featherston was served on March 8, 2005 and provides the United States Marshals' Process Receipt and Return, also known as the USM–285 form, as evidence. In order to ensure that Featherston is afforded notice of the claim against him and an opportunity to be heard, the Court ordered the United States Marshals Service to request a waiver of service from Featherston and, failing that, to serve him personally. *Locicero v. O'Connell*, No. 04 Civ. 07708, Order dated January 26, 2006 (S.D.N.Y. 2006) ("Order"). As of the date of this Decision and Order, there is no indication that service has been completed pursuant to the Order.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

Because Locicero is proceeding in this matter *pro se*, he is entitled to "be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 69 (2d Cir.1998) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984)) (internal quotation marks omitted).

### 1. *Subject Matter Jurisdiction*

Challenges to subject matter jurisdiction pursuant to Rule 12(b)(1) may contest "either the facial sufficiency of the pleadings in the complaint or the existence of subject matter jurisdiction in fact." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F.Supp.2d 394, 404 (S.D.N.Y.2002), *aff'd*, 346 F.3d 357 (2d Cir.2003). As in a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "[i]n a facial challenge, the [C]ourt accepts as true the uncontroverted factual allegations in the complaint." *Id.; see also Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998).

The preliminary showing that must be made by the plaintiff is not meant to be overly burdensome, "allowing for subject matter jurisdiction so long as 'the federal claim is colorable.'" *Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 467 (S.D.N.Y. 2001) (quoting *Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir.1996)). "In a close case, the factual basis for a court's subject matter jurisdiction may remain an issue through trial, and, if and when doubts are resolved against jurisdiction, warrant dismissal at that time." *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 121 n. 1 (2d Cir.1998) (citation omitted).

### 2. *Failure to State a Claim*

Pursuant to the liberal pleading requirements of the Federal Rules of Civil Procedure, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Accordingly, dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). In mak-

ing this determination, a court must accept all factual assertions in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Jaghory,* 131 F.3d at 329.

■ In deciding a motion to dismiss, a court may review documents integral to the complaint upon which the plaintiff relied in drafting the pleadings, as well as "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Roth-man v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989)); *see also Schnall v. Marine Midland Bank,* 225 F.3d 263, 266 (2d Cir.2000). In the case of a motion to dismiss involving a claim by a *pro se* plaintiff, a court may look beyond the complaint to the plaintiff's opposition papers. *See Burgess v. Goord,* No. 98 Civ.2077, 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan. 26, 1999).

Moreover, the Court must "read the [*pro se* plaintiff's] pleadings ... liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPher-son v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)); *see also Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nevertheless, the judicial solicitude accorded to *pro se* litigants cannot be used to cure a complaint that consists merely of "broad generalizations ... sweeping castigations, and unfounded conclusions, but not specific facts from which an actual deprivation of [constitutional] rights may be inferred." *Webb v. Goord,* 197 F.R.D. 98, 102 (S.D.N.Y.2000) (citing *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978)).

In sum, a *pro se* litigant must allege sufficient facts indicating a deprivation of constitutional rights. *See Alfaro Motors,*

*Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir. 1987). That being said, "assertions must truly be bare for dismissal to be appropriate." *Burgess,* 1999 WL 33458 at *2 (citing *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 672 (2d Cir.1995)).

### B. *APPLICATION*

As an initial matter, the Court rejects O'Connell's Rule 12(b)(1) motion to dismiss Locicero's complaint for lack of subject matter jurisdiction. Although O'Connell recites the applicable legal standard, he accords it no further attention. Since Locicero's Eighth Amendment claim clearly raises a federal question, the only issue to be addressed is whether the federal claim is sufficiently colorable. Locicero's claim cannot be characterized, as O'Connell suggests, as less than even "minimally plausible." (*See* Def. Mem. 4 (citing *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 92–99 (2d Cir.1990)).) As discussed below, Locicero's allegations that he was physically assaulted by a Downstate correction officer in the absence of any security—or safety-related justification, and that O'Connell was deliberately indifferent to the risk of this physical violence occurring, incontrovertibly raise a sufficiently colorable claim that his Eighth Amendment rights were violated. Accordingly, the remainder of the Court's discussion addresses only the Rule 12(b)(6) inquiry.

#### 1. *Personal Involvement*

■ It is well-established that, to state a claim under 42 U.S.C. § 1983 against a supervisory official, a plaintiff must show that the official was personally involved in the alleged deprivation of constitutional rights. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). However, plaintiffs are not required to plead detailed facts in addition to and in support of their particu-

lar allegations of personal involvement. Such a requirement would amount to a heightened pleading standard and is unwarranted under Fed.R.Civ.P. 8(a)(2). *See Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

■ In regards to a defendant sued in his supervisory capacity, personal involvement may be shown by evidence that

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon,* 58 F.3d at 873 (internal citations omitted).

The Court is mindful of the difficulty of prescribing a bright line rule in this context. On the one hand, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003), *cert. denied,* 543 U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005). On the other hand, an official in a position of authority can be held liable for failure to properly exercise that authority. *See Colon,* 58 F.3d at 873; *see also McKenna v. Wright,* 386 F.3d 432, 437–438 (2d Cir.2004) (holding that allegations of responsibility for enforcing the policies that allegedly led to a deprivation, as opposed to a mere linkage in the prison chain of command, were sufficient).

■ The Court concludes that Locicero's pleadings establish that his claim against O'Connell is predicated not upon O'Connell's mere position in the prison chain of command, but rather upon his supervisory responsibilities as Downstate superintendent. The Court takes note of the possibility that, were O'Connell's argument to win the day, it would effectively confer upon prison superintendents a *de facto* immunity in a wide variety of cases. The reality is that, prior to discovery, inmates cannot be expected to allege as fact, through reference to sources such as the internal grievance system, performance reviews, conduct reports, and common knowledge, much more than that the superintendent was aware of the substantial risk of physical harm a subordinate posed to prisoners.

Locicero contends that four of the five evidentiary showings enumerated in *Colon,* 58 F.3d at 873, apply in this case. More specifically, he alleges that "[b]y ignoring the repeated malicious acts of ... officer [Featherston], Superintendent O'Connell for all intents and purposes, condoned it." (Compl.¶ 25.) Since the Court is required to construe Locicero's pleadings liberally, it reads the phrase "repeated malicious acts" to refer to similar misconduct occurring prior to the assault alleged in this case, and not the particular deprivation alleged by Locicero. This reading receives support from Locicero's further allegation that Featherston was relieved of his responsibilities on at least one occasion for "similar problems." (Compl.¶ 14).

Moreover, Locicero has clarified, to the Court's satisfaction, that this reading of the charge was the one intended. (*See* Pl.

Mem. 4 (alleging, among other things, that Featherston was guilty of "past illegal conduct" and that "a number of complaints" had been filed against him).) Seen in this light, Locicero has, at the very least, alleged that O'Connell was grossly negligent in supervising Featherston. This assertion alone is sufficient to satisfy the standard of personal responsibility but, as is discussed below in Part II.B.2.b, the Court concludes that Locicero has pleaded sufficient facts to support an allegation of an even more culpable state of mind.

### 2. *Deliberate Indifference*

■ An Eighth Amendment claim based on prison conditions requires an inmate to show that prison officials acted with "deliberate indifference." *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Courts now divide the deliberate indifference inquiry into two parts, one objective and the other subjective. *See, e.g., Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994).

### a. *Objective Prong*

■ To establish a claim of deliberate indifference, an inmate must show that the alleged deprivation involves the wanton and unnecessary infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). It is commonly stated that, for purposes of a failure-to-protect claim, the alleged deprivation must be "sufficiently serious" to deny "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citation and internal quotation marks omitted); *see also Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Hathaway*, 37 F.3d at 66. At the same time, "[i]n the exces-

sive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citation omitted). In such circumstances, the degree of force used need only rise above a minimal threshold. *See id.* at 9–10, 112 S.Ct. 995.

Although O'Connell has not raised any question as to the sufficiency of Locicero's allegations in this regard, the medical documentation attached to the Complaint supports the conclusion that the force used against Locicero was more than minimal. For example, an examination of Locicero performed by a registered nurse one week after the alleged assault indicates that Locicero still showed signs of discoloration, scrapes, blurry vision, and a headache. (*See* Memorandum of Sperry RN, dated August 16, 2001, attached as Exhibits p. 40 to Compl.)[4] *Cf. Hudson*, 503 U.S. at 10, 112 S.Ct. 995 (holding that blows that caused bruises, swelling, and oral injuries are not *de minimis*); *Flowers v. Phelps*, 956 F.2d 488, 490 (5th Cir.1992) (affirming district court's award of damages to an inmate who suffered "moderate swelling and probable sprain of [the] left ankle, a small abrasion, and a limited range of motion due to pain" as a result of an unprovoked beating by correction officers), *vacated in part on other grounds*, 964 F.2d 400 (5th Cir.1992).

### b. *Subjective Prong*

The subjective prong of the deliberate indifference inquiry requires that the charged official "act with a sufficiently culpable state of mind." *See Hathaway*, 99

---

4. Locicero has attached forty-nine pages of exhibits to his complaint. Although he has not separately numbered the exhibits as is the usual practice, he has provided a table of contents and has paginated the exhibits.

F.3d at 553 (citation omitted). "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998) (quoting *Hathaway*, 99 F.3d at 553). Thus, to survive a motion to dismiss, Locicero must have alleged a set of facts that, assuming their veracity, demonstrate that O'Connell knew of and disregarded the excessive risk Featherston posed to inmate health and safety. The Court is persuaded that Locicero's pleadings assert at least two separate grounds for concluding that O'Connell acted with a sufficiently culpable state of mind when he allegedly failed to address the risk of physical harm Featherston posed to inmates: first, that the risk Featherston posed was obvious; second, that O'Connell was aware of and failed to adequately address Featherston's history of misconduct as a result of past complaints and official action taken against him.

### i. *Obviousness of the Risk*

"[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970. A defendant may be held liable if the evidence shows that he (1) refused to verify underlying facts that he suspected to be true or (2) declined to make inferences of risk that he strongly suspected to be true. *Id.* at 843 n. 8, 114 S.Ct. 1970. At

the pleading stage, it is sufficient that Locicero alleges that the risk Featherston posed to inmates was obvious prior to the deprivation Locicero allegedly suffered.[5]

Locicero alleges that it was "well known by the officers at Downstate Correctional Facility that Officer Featherston was infamous for the abuse of inmates." (Pl. Mem.4.) Though it is uncertain whether O'Connell would properly be characterized as an "officer" at Downstate, it is enough that Locicero alleges it was common knowledge among staff that Featherston abused inmates on numerous occasions. In fact, the Complaint recites an incident that suggests that the risk Featherston posed was obvious to at least one Downstate staff member. Locicero alleges that Officer Isaacs, given a description of the nature of the attack, responded, "Oh! That sounds like Officer Featherston, he had to be removed from draft for similar problems." (Compl.¶ 14.) From this assertion, it is reasonable to infer that, if Featherston's alleged history of violence against inmates was commonly known by the Downstate staff, it would have reached the facility's superintendent as well.

### ii. *Notice of Prior History*

Aside from allegations relating to the obviousness of the risk of physical harm to inmates that Featherston posed, Locicero's pleadings may fairly be read to express an allegation that O'Connell had actual notice of Featherston's propensity to violent behavior prior to the deprivation at issue in this case and that he took no action to deal with it effectively.[6] Actual knowledge of a

---

5. Ultimately, since the deliberate indifference inquiry incorporates the standard of recklessness, a defendant may escape liability by showing that what may have been obvious to others escaped him. *See Farmer v. Brennan*, 511 U.S. 825, 843 n. 8, 114 S.Ct. 1970, 128

L.Ed.2d 811 (1994). Questions as to whether the obviousness of this risk was lost on O'Connell are more appropriately addressed in a motion for summary judgment or at trial.

6. *Joyner v. Greiner*, 195 F.Supp.2d 500, 506 (S.D.N.Y.2002), is distinguishable in that it

substantial risk of harm may be inferred from evidence showing that the risk was well-documented or expressly noted by officials in the past. *See Farmer*, 511 U.S. at 842, 114 S.Ct. 1970; *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1396 (8th Cir.1997) (concluding that the trial court's finding that the superintendent of a correctional facility was deliberately indifferent to an officer's pattern of using excessive force was supported by evidence that, among other things, the superintendent had received written complaints of the officer's use of excessive force against other inmates and was advised that the officer should be discharged or reassigned due to persistent complaints, yet took no action in response to such information).

First, Locicero alleges that Featherston reportedly was "removed from draft for similar problems." (Compl.¶ 14.) The Court infers from this statement that Featherston was officially reprimanded for misconduct towards inmates and that the severity of his misconduct rose to a level requiring his temporary removal from duty or from a particular program. Given the seriousness of Featherston's underlying acts as alleged, absent a showing to the contrary, either in a motion for summary judgment or at trial, it may be reasonably inferred that O'Connell was aware of or actively participated in such official action by failing to respond appropriately to the circumstances.

Second, Locicero suggests that O'Connell could have become aware of the risk Featherston posed through prior inmate grievances. It is not entirely clear wheth-

er the three-step Inmate Grievance Procedure established by 7 New York Codes, Rules and Regulations ("NYCRR") § 701.7 will always involve the superintendent when a complaint is filed alleging excessive force by a correction officer.[7] However, Locicero may uncover evidence supporting this allegation only if he is afforded the opportunity to engage in discovery. Accordingly, granting Defendants' motion to dismiss at this stage would be inappropriate.

## III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendant James O'Connell to dismiss the complaint herein (Docket No. 7) is DENIED; and it is further

**ORDERED** that the parties confer and submit to the Court by April 30, 2006 an agreed-upon proposed case management plan. In the event the parties inform the Court that they have been unable to agree, the Court will direct the parties to arrange a conference before Magistrate Judge Debra C. Freeman, to whom this case will be referred for supervision of remaining pretrial proceedings, to resolve any disputes.

**SO ORDERED.**

---

involved a single grievance filed after the incident alleged in that case, whereas Locicero alleges that numerous complaints were filed against Featherston prior to the alleged assault.

7.  7 NYCRR § 701.7(a)(3) permits the Inmate Grievance Resolution Committee (IGRC) to

resolve some grievances informally, without the superintendent's involvement. In addition, decisions that do not require action by the superintendent or the Central Office Review Committee may be resolved by the IGRC. *Id.* at § 707.7(a)(4)(vi).