**Phillip JEAN–LAURENT, Plaintiff,**

v.

**C.O. Gorden WILKERSON # 11281, CPT. Donald McCarthy # 988, CPT. Luis Matos # 856, CPT. Dominick Martinez # 1218, CPT. Debra Burrows # 997, C.O. Pedro Rodriguez # 15262, C.O. Marcus Robinson # 12169, C.O. Deidra Colds # 12735, C.O. Terry Fowler # 3291, John Does, Deputy Ronald Jorgenson, Warden Patrick Walsh, Commissioner Martin Horn, Defendants.**

**No. 05 Civ. 0583(VM).**

United States District Court,
S.D. New York.

July 6, 2006.

See also, 2006 WL 1408541.

Phillip Jean–Laurent, Fishkill, NY, pro se.

Sarah Beth Evans, NYC Law Department, Office of the Corporation Counsel, New York, NY, for defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Phillip Jean–Laurent ("Jean–Laurent") brings this action *pro se*, alleging that he was unconstitutionally assaulted, verbally abused, strip-searched, and deprived of his property while in pre-trial custody at the George Motchan Detention Center ("Motchan") in New York City. Defendants are officers and officials (collectively, "Defendants") at Motchan. Jean–Laurent claims that Defendants either carried out, observed, or approved the unconstitutional acts. Defendants move to dismiss several of Jean–Laurent's causes of action pursuant to F.R.C.P. 12(b)(6) on the ground that Jean–Laurent fails to state a claim on which relief can be granted. For the reasons discussed below, several of the claims raised in the complaint are dismissed.

## I. BACKGROUND

### A. FACTS

The factual summary presented below is derived from Jean–Laurent's complaint. On the morning of June 16, 2004, officers at Motchan searched the cells in Jean–Laurent's housing unit in response to a recent stabbing at the prison. Captain Donald McCarthy ("McCarthy"), one of the Defendants, led the search of Jean–Laurent's cell, telling his fellow officers to "shake him down good and take all his extra belongings." During the search, Jean–Laurent was ordered to strip and at one point was told to lift his mattress so the officers could look beneath it. When Jean–Laurent refused, citing a problem with his back, McCarthy summoned other officers to remove Jean–Laurent from the cell.

Jean–Laurent and two other inmates were then handcuffed and escorted to a hallway where they were ordered to kneel. When one of the other inmates refused to comply due to a knee injury, another defendant, Deputy Warden Ronald Jorgensen ("Jorgensen"), told an officer to take that inmate into the stairwell and break his leg if necessary. Jean–Laurent turned and saw the inmate being forcibly subdued in the stairwell. Defendant Officer Gorden Wilkerson ("Wilkerson") then began berating Jean–Laurent for looking into the stairwell. He grabbed Jean–Laurent by his collar and slammed him against the wall as defendants Jorgensen, Captain Debra Burrows ("Burrows"), Captain Luis Matos ("Matos"), Officer Terry Fowler ("Fowler") and Officer Deidra Colds ("Colds") looked on.

Matos then told Wilkerson to take Jean–Laurent into the stairwell and make him strip. Wilkerson, Matos, Jorgensen, Burrows, and Officers Pedro Rodriguez ("Rodriguez") and Marcus Robinson ("Robinson") looked on as Jean–Laurent removed his clothing. Wilkerson and Matos mocked and yelled at Jean–Laurent as he was naked, and Wilkerson struck him several times in the face and hemmed him against the wall by his neck. When permitted to dress and return to his cell, Jean–Laurent found his clothing and legal papers ruined.

### B. PROCEDURAL HISTORY

Jean–Laurent filed suit pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 2000cc–1, claiming that the prison officers violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Specifically, he alleges that Wilkerson violated the Eighth Amendment's proscription against cruel and unusual punishment by using excessive physical force; that the strip searches violated his Fourth Amendment freedom from unreasonable search and seizure; that because he is a Muslim, the strip search also violated his First Amendment right to freedom of religion and related federal law; that Warden Patrick Walsh ("Walsh") and the officers who observed the alleged assault and strip searches breached their duty to protect Jean–Laurent; that defendant New York City Department of Correction Commissioner Martin Horn ("Horn") encouraged subordinate officers at the prison to use unconstitutional means of subduing prisoners; and that officers destroyed Jean–Laurent's property without due process, in violation of the Fourteenth Amendment. He also makes several claims under New York state law.

Defendants move to dismiss many of the claims, arguing that Jean–Laurent's strip searches were constitutional; that the officers who observed the alleged assault and strip search had no duty to intervene; that the supervisors were not personally in-

volved in the alleged incidents and thus cannot be held liable; and that the destruction of Jean–Laurent's belongings does not violate the Due Process Clause because New York courts provide Jean–Laurent with an adequate remedy for such claims. Notably, Defendants do not seek to dismiss the claim that Wilkerson used excessive force. The Court will address each claim in turn.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only when a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In making this determination, a court must accept all well-pleaded factual assertions in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). Moreover, when a plaintiff brings a case *pro se*, the Court must construe his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Still, a *pro se* plaintiff bringing an action pursuant to 42 U.S.C. § 1983 ("§ 1983") must make specific claims because "allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

### B. CLAIMS AGAINST OFFICERS IN THEIR OFFICIAL CAPACITIES

The complaint seeks damages from Defendants in their "individual and official capacities." (Amended Compl. ¶ 15.) However, the Eleventh Amendment precludes suits for monetary damages from proceeding against states or state officials acting in their official capacity, unless the state has waived its sovereign immunity. *See Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (*citing Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)). Claims against Defendants in their official capacity would ultimately be claims against the state because any damages would be paid out of state coffers. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citations omitted). Since New York has consented to be sued for certain actions only in its Court of Claims, this Court lacks subject matter jurisdiction over Defendants in their official capacities. *See* N.Y. Ct. Cl. Act § 8; *see also Glassman v. Glassman*, 309 N.Y. 436, 131 N.E.2d 721, 724 (1956). Thus, all of Jean–Laurent's claims against officers in their official capacities are dismissed.

### C. § 1983 CLAIMS AGAINST OFFICERS IN THEIR INDIVIDUAL CAPACITIES

To establish a claim under § 1983, a plaintiff must allege that defendants (a) deprived him of rights secured by the Constitution and laws of the United States while (b) acting under the color of state law. *See* 42 U.S.C. § 1983. As officers of the New York City Department of Corrections, Defendants all acted under the color of state law. The relevant inquiry is whether the alleged behavior rises to the level of a constitutional deprivation.

### 1. Strip Search: Fourth Amendment Claim

Jean–Laurent claims that his strip searches by Defendants violated his Fourth Amendment right to protection from unreasonable search and seizure. While it is true that the constitutional rights of prison inmates are curtailed, *see Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable. *See Hodges v. Stanley,* 712 F.2d 34, 35–36 (2d Cir.1983) (*citing Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). In determining whether a particular strip search is reasonable, the Court considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell,* 441 U.S. at 559, 99 S.Ct. 1861.

■ Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal. *See, e.g., id.* (upholding prison policy of conducting visual body cavity search after every contact visit with someone from outside the prison); *Covino v. Patrissi,* 967 F.2d 73, 79 (2d Cir.1992) (upholding prison policy of randomly conducting visual body cavity searches of inmates); *Michenfelder v. Sumner,* 860 F.2d 328, 332–33 (9th Cir. 1988) (upholding prison policy of conducting visual body cavity searches of maximum security prisoners each time they enter and leave the maximum security unit).

■ However, a strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish. *See, e.g., Covino,* 967 F.2d at 80 (*citing Hurley v. Ward,* 584 F.2d 609 (2d Cir.1978) for the proposition that a strip search accompanied by physical and verbal abuse is unconstitutional); *Hodges,* 712 F.2d at 35–36 (second strip search performed soon after a first strip search served no legitimate interest when prisoner was under continuous escort); *Bono v. Saxbe,* 620 F.2d 609, 617 (7th Cir.1980) (policy of strip searching prisoners after non-contact, supervised visits is unreasonable absent showing of risk that contraband will be smuggled in).

■ Since Jean–Laurent's first strip search was conducted inside his cell as part of a larger security response to a stabbing at the prison, it cannot sustain a § 1983 claim. The second search, however, is much more dubious. According to the complaint, Jean–Laurent was under constant supervision by Defendants from the time of the first strip search to the second. Since he had no opportunity to acquire contraband during the supervised period, the second search as alleged served no legitimate correctional purpose. Moreover, the verbal and physical abuse that allegedly accompanied the strip search support a finding that the search was designed to harass and intimidate. *See Covino,* 967 F.2d at 80. Accordingly, the complaint properly alleges that the second strip search was unreasonable and thus that Wilkerson, who performed the search, and Matos, who ordered it, violated Jean–Laurent's Fourth Amendment right to protection from unreasonable searches.

### 2. Strip Search: First Amendment Claim

■ Jean–Laurent also alleges that as a Muslim, he is not permitted to be seen naked by strangers, and thus his strip search violated both his First Amendment freedom of religion and the Religious Land

Use and Institutionalized Persons Act. *See* 42 U.S.C. § 2000cc–1 (2000).[1]

A regulation that impinges on a prisoner's freedom of religion must be rationally related to a legitimate penological interest to survive First Amendment scrutiny. *See Show v. Patterson,* 955 F.Supp. 182, 190 (S.D.N.Y.1997) (*citing Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Reasonable strip searches of prisoners, regardless of their religion, are generally acceptable under the First Amendment because they further the compelling governmental interest of penological safety. *See Hurley v. Ward,* 549 F.Supp. 174, 186 (S.D.N.Y.1982). However, because Jean–Laurent's second strip search as alleged furthered no legitimate penological goal, Jean–Laurent has properly pled that Wilkerson and Matos violated his First Amendment religious rights by conducting the second search.

■ With regard to the strip searches, Jean–Laurent also alleges that Matos and Wilkerson violated 42 U.S.C. § 2000cc–1, which states that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that the imposition of that burden on that person is: (1) in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest.

Jean–Laurent's complaint properly alleges that the second strip search in this case did not advance any legitimate governmental goal. Thus, the motion to dismiss the

§ 2000cc–1 claim against Matos and Wilkerson is denied.

### 3. *Excessive Force: Eighth Amendment Claim*

Jean–Laurent alleges that Wilkerson used excessive force in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause by slamming him against the wall and striking him in the face. For the sake of accuracy, the Court points out that because the alleged incident occurred when Jean–Laurent was a pre-trial detainee, it is governed by the Due Process Clause of the Fourteenth Amendment, and not the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (*quoting Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)) ("[T]he state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). Because a pre-trial detainee's constitutional rights are at least as great as those of a prisoner, the Due Process Clause protections afforded to Jean–Laurent are coextensive with those afforded by the Eighth Amendment. *See Bell,* 441 U.S. at 545, 99 S.Ct. 1861. Thus, Jean–Laurent's claim that Wilkerson used excessive force, unchallenged in this motion, will be analyzed under the Fourteenth Amendment.

### 4. *Verbal Intimidation: Eighth and Fourteenth Amendment Claims*

■ Jean–Laurent alleges that verbal abuse inflicted by Wilkerson, Matos, and

---

**1.** The complaint improperly alleges that the strip search violates 42 U.S.C. § 2000bb–1, a law held unconstitutional in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). However, Jean–Laurent properly references 42 U.S.C. § 2000cc–1 in his Memorandum in Opposition to Defen-

dant's Motion to Dismiss (at 13). Since a *pro se* plaintiffs' complaint should be interpreted liberally "to raise the strongest arguments that they suggest," *Graham,* 89 F.3d at 79, the Court concludes that Jean–Laurent's complaint intended to plead a violation of 42 U.S.C. § 2000cc–1.

others violated his Fourteenth Amendment Due Process Rights. However, "[a]llegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983." *Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y.1996) (*citing Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)). Since verbal intimidation does not rise to the level of a constitutional violation, all federal claims based on the verbal harassment inflicted on Jean–Laurent are dismissed.

### 5. *Deprivation of Property: Fourteenth Amendment Claim*

Jean–Laurent's complaint alleges that McCarthy, who led the search of Jean–Laurent's cell, violated his Due Process rights by destroying his belongings. However, the deprivation of property is not actionable under § 1983 if the state provides an adequate post-deprivation remedy and the deprivation was not the result of an established state practice. *See Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 542–43, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

Here, the destruction of Jean–Laurent's property as alleged in this complaint was the result of a "random and unauthorized" act, not an established state practice. *See Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990) ("[A]dequate post-deprivation remedy is a defense to a Section 1983 due process claim only where the deprivation is random and unauthorized."). Moreover, § 9 of New York's Court of Claims Act permits inmates like Jean–Laurent to pursue deprivation of property claims against the State of New York in New York courts. *See* N.Y. Ct. Cl. Act § 9 (McKinney's 1989); *see also Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Since New York law provides Jean–Laurent with an adequate remedy, the deprivation of property claim against McCarthy cannot be brought under § 1983 and is thus dismissed. *See Franco v. Kelly,* 854 F.2d 584, 588 (2d Cir.1988) (citations omitted) ("[S]ection 1983 cannot be made a vehicle for transforming mere civil tort injuries into constitutional injuries.").

### 6. *Supervisor Liability of Prison Officials*

Jean–Laurent alleges that Horn, Walsh, and other high-ranking corrections officers violated his due process rights by either authorizing or not preventing the strip search and the use of force. It is settled law that supervisors cannot be held liable in a § 1983 suit solely on a theory of respondeat superior. *See Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (*citing Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003)). Rather, a plaintiff in a § 1983 action must show that the supervisor was personally involved in a constitutional violation by either: (1) directly participating in the violation; (2) failing to remedy the wrong after it comes to his attention; (3) creating a policy or custom under which unconstitutional practices occur, or allowing the continuation of such custom and policy; (4) being grossly negligent in supervising subordinates who committed the wrongful acts; or (5) failing to act on information indicating that unconstitutional acts are occurring. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (*citing Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). To survive a motion to dismiss, a § 1983 complaint need only allege that the supervisor was personally involved in the constitutional deprivation and need not plead detailed facts about the involvement. *See Locicero v. O'Connell,* 419 F.Supp.2d 521, 525–26 (S.D.N.Y.2006)

(*citing Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002)).

■ Jean–Laurent's complaint alleges that Horn "expressly authorized ... [corrections officers] to maintain a custom practice that authorized the use of physical force against inmates without just cause." (Amended Compl. ¶ 57.) This allegation clearly falls into the third *Colon* category and thus properly states a claim that Horn was personally involved in violating Jean–Laurent's constitutional rights. *See Colon,* 58 F.3d at 873. While an allegation as broad as this must be backed by specific facts to survive summary judgment, the mere allegation of personal involvement is sufficient for the claim to survive a motion to dismiss. *See Locicero,* 419 F.Supp.2d at 525–26.

Conversely, Jean–Laurent's complaint contains no allegations that Walsh was personally involved in any constitutional deprivation. It merely alleges that Walsh had supervisory authority over other corrections officers (Amended Compl. ¶ 13); that "at all relevant times he acted under the color of state law and pursuant to a custom practice" (*id.*); that he informed inmates that new security measures were being taken in response to the stabbing (*id.* ¶ 18); and that he came on the scene after the strip search and ordered Wilkerson to cease his behavior (*id.* ¶ 32). There is no allegation that Walsh authorized the strip search or any use of force or that he knew any abuses might be occurring. "The bare fact that [one] occupies a high position in the New York prison hierarchy is insufficient to sustain" a § 1983 claim. *Colon,* 58 F.3d at 874. Since the Complaint does not allege that Walsh was personally involved in any constitutional deprivation, all claims against him are dismissed.

■ Jorgensen, Burrows, and Matos are alleged to have been present while Wilkerson, a lower-ranking officer, conducted the strip search and used excessive force. Jean–Laurent asserts that the higher-ranking officers breached their duty to protect him from constitutional harms and thus should be held liable under § 1983. Defendants move to dismiss the claims, arguing that absent personal involvement, the officers cannot be held liable for merely being present at a constitutional violation. However, *Colon'*s fourth category of personal involvement states that a supervisory defendant is personally involved in a constitutional deprivation if the defendant is "grossly negligent in supervising subordinates who committed the wrongful acts." *Colon,* 58 F.3d at 873. If proven, the allegations that Jorgensen, Burrows and Matos stood by and watched as an inferior officer used excessive force and conducted an unreasonable strip search could support a finding that these defendants were grossly negligent in supervising Wilkerson. Accordingly, the motion to dismiss the § 1983 claims against Jorgensen, Burrows, and Matos is denied.

Captain Dominick Martinez is also listed in the Complaint, but he is not alleged to have been present during or personally involved in any of the incidents that underlie this suit. Rather, the § 1983 claims against him appear to arise solely by virtue of his rank. Since "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Colon,* 58 F.3d at 873 (citations omitted), all federal claims against Martinez are dismissed.

### 7. *Liability of Lower Ranking Officers*

■ Fowler, Colds, Rodriguez, Robinson, and two John Does are alleged to have observed either Jean–Laurent's strip search or his alleged assault by Defendants. Jean–Laurent argues that their failure to intervene and stop the incidents

amounts to a § 1983 violation. Defendants counter that merely observing a constitutional deprivation does not render the witness liable under § 1983.

Law enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988) (citations omitted). Liability will attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. *Id.; McLaurin v. New Rochelle Police Officers*, 373 F.Supp.2d 385, 395 (S.D.N.Y.2005) (*citing Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir.1997)).

Fowler and Colds are alleged to have observed only the first assault, where Jean–Laurent says Wilkerson stood him to his feet by his collar and then slammed him against the wall. Even if those actions by Wilkerson amount to a constitutional violation, as a matter of law, Colds and Fowler did not have a reasonable opportunity to intervene in such a rapid series of events. *See O'Neill*, 839 F.2d at 11–12 (holding that a series of three successive blows "was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"). Since the facts alleged, read in the light most favorable to the plaintiff, indicate that Colds and Fowler had no opportunity to prevent the alleged assault, all charges against them are dismissed.

Conversely, as alleged, the second strip search and second assault observed by Rodriguez, Robinson, and two John Does were of sufficient duration that the officers had the opportunity to intervene. Taking the allegations of the complaint to be true, the observing officers should have known that a constitutional violation was taking place and that they had a duty to stop it. These officers, however, allegedly did nothing. Thus, the complaint properly alleges § 1983 claims against Rodriguez, Robinson, and the two John Does.

### D. *STATE CLAIMS*

In addition to bringing federal claims under § 1983, Jean–Laurent brings claims for negligence, assault, battery, and intentional infliction of emotional distress ("IIED") under state law. The Court will address each claim in turn.[2]

#### 1. *Negligence*

■ "Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard inmates." *Sanchez v. State*, 99 N.Y.2d 247, 754 N.Y.S.2d 621, 784 N.E.2d 675, 678 (2002) (*citing Flaherty v. State*, 296 N.Y. 342, 73 N.E.2d 543, 544 (1947)).

Taking the allegations of the complaint to be true, Matos, Burrows, and Jorgensen breached their duty to protect Jean–Laurent when they stood by and watched an inferior officer beat and improperly strip-search him because they could reasonably foresee that not intervening would lead to harm. Likewise, because it is foreseeable that such a policy would lead to prisoner abuse, Horn breached his duty to protect

---

**2.** Although Defendants do not raise specific arguments supporting the dismissal of the state claims in their memorandum of law, in their motion to dismiss they do seek dismissal of all charges against all Defendants except Wilkerson. Thus, in the interest of judicial economy, the Court will consider the merits of dismissing each of the state claims.

Jean–Laurent if he authorized officers to use excessive force on prisoners. Moreover, as law enforcement officers, Rodriguez, Robinson, and the two John Does who observed the strip search breached their duty to intervene and protect Jean–Laurent from abuse at the hands of a fellow officer.[3]

■■■■ While Wilkerson's alleged behavior is reprehensible, Jean–Laurent's claim against him is properly brought as an intentional tort, not negligence. *See Shenandoah v. Hill,* 9 Misc.3d 548, 799 N.Y.S.2d 892, 897 (N.Y.Sup.Ct.2005) (holding that merely adding the word "carelessly" to the complaint cannot transform to negligence "what can otherwise only be viewed as an intentional action").

There is nothing in the complaint to support a claim that McCarthy, Martinez, or Walsh breached any duty to protect Jean–Laurent. Moreover, the alleged facts do not support a claim that Colds or Fowler breached their duty either because they observed only the first assault, which as a matter of law occurred too quickly for them to intervene.

### 2. *Assault and Battery*

The complaint alleges that Wilkerson is liable for assault and battery for slamming Jean–Laurent against the wall and for striking him several times in the face. As these claims are unchallenged at this point in the proceedings, the Court need not address them here.

### 3. *Intentional Infliction of Emotional Distress*

For a defendant to be liable for IIED, he must have (1) intentionally (2) caused (3) severe emotional distress (4) through

extreme and outrageous conduct. *See Howell v. New York Post Co.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993) (*citing* Restatement [Second] of Torts § 46 (1965)). The complaint alleges that Defendants acted with the purpose of inflicting emotional distress, but nowhere does it claim that Jean–Laurent actually suffered any severe emotional distress. Since IIED is meant to apply in only the rarest circumstances, *see id.,* failure to allege one of its elements is fatal to Jean–Laurent's claim. Thus, all of Jean–Laurent's IIED claims are dismissed.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendants Gorden Wilkerson ("Wilkerson"), Donald McCarthy ("McCarthy"), Luis Matos ("Matos"), Dominick Martinez ("Martinez"), Debra Burrows ("Burrows"), Pedro Rodriguez ("Rodriguez"), Marcus Robinson ("Robinson"), Deidra Colds ("Colds"), Terry Fowler ("Fowler"), John Does, Ronald Jorgensen ("Jorgensen"), Patrick Walsh ("Walsh"), and Martin Horn ("Horn") to dismiss all claims raised by plaintiff Phillip Jean–Laurent ("Jean–Laurent") against them in their official capacities is GRANTED.

**ORDERED** that the motion to dismiss all claims against McCarthy, Martinez, Colds, Fowler, and Walsh is GRANTED.

**ORDERED** that the motion to dismiss all of Jean–Laurent's claims of intentional infliction of emotional distress is GRANTED.

**ORDERED** that the motion to dismiss Jean–Laurent's negligence claim against Wilkerson is GRANTED.

---

**3.** The Court does not consider the issue of qualified immunity in this motion since De-

fendants have not raised it.

**ORDERED** that the motion to dismiss Jean–Laurent's claims against Wilkerson and Matos stemming from the alleged second strip search is DENIED.

**ORDERED** that, except as granted above, the motion to dismiss Jean–Laurent's claims under 42 U.S.C. § 1983 and negligence claims against Wilkerson, Matos, Burrows, Rodriguez, Robinson, Jorgensen, Horn and two John Does is DENIED.

**SO ORDERED.**